# Feibelman v. Manchester Fire Assurance Co.

*Action on Policy of Insurance.*

1. *Action on fire insurance policy; pleading; construction of code form; variance.*—An action on a policy of fire insurance in accordance with the form set out in Code 1886, p. 792, Form 13, implies that the suit is brought in the name of the assured; and evidence introduced to show that plaintiff is the owner of the policy by assignment creates a fatal variance between the pleading and the proof.

2. *Same.*—In an action by an assignee of a policy of insurance, the failure to aver the assignment in the complaint is cured by the defendant interposing a plea denying plaintiff's ownership.

3. *False statements by assured; when will not avoid policy.*—A false

[Feibelman v Manchester Fire Assurance Co.]

statement by the assured, subsequent to a loss, will not avoid a policy unless such statement is shown to be materially connected with the risk.

4. *Fire insurance; loss caused by fraud of agent; when covered by the policy.*—Where property is fraudulently destroyed by the agent of the assured, without the connivance of the latter, such loss is included in the risk covered by the policy in the absence of an excluding clause.

5. *Motion to strike plea; when refusal error without injury,*—When there are two or more pleas covering the same defense, the refusal of the court to strike one of them because not verified according to law, is error without injury if the other plea or pleas are properly verified.

6. *Impeachment by a party of his own witness; what does not constitute.*—It is competent for a party to show by his own witness that he (said witness) was mistaken in reference to a matter unfavorable to him, and to elicit from such witness the extent and character of his recollection; such examination is not within the rule prohibiting a party from impeaching his own witness.

7. *Impeachment of character.*—The character of a witness can be impeached by general reputation only, and not by evidence of particular facts.

8. *Demurrer to plea improperly overruled; subsequent proceedings.*—Notwithstanding a demurrer to a faulty plea is improperly overruled, the subsequent proceedings must be conducted on the hypothesis that the plea was good, and objections to evidence pertinent to the issue raised by the plea are properly overruled.

9. *Instructions to jury after retirement, in absence of counsel; presumption of injury.*—After the retirement of the jury, it is improper for the court to give them further, or explanatory, instructions, in the absence of counsel witnout notice; or excuse for not giving it, and injury therefrom will, as matter of law, be conclusively presumed.

APPEAL from Jefferson Circuit Court.

Tried before Hon. JAMES J. BANKS.

This was an action upon a policy of fire insurance brought by the appellant against the appellee to recover insurance upon property destroyed by fire. The complaint claimed a gross sum, specifying that a designated part thereof was upon fixtures, and another part for two pool tables, and another sum for stock of wine, whiskey, &c. All of which was alleged to have been destroyed by fire, and the amount of loss upon each article agreed upon with the adjuster of the defendant. An amendment to the complaint was afterwards made claiming a gross sum for the entire property covered by the policy, without specifying the value of any item, and without alleging that the loss had been adjusted as was set out in the original complaint. To the complaint as amended,

the defendant demurred upon the ground of a misjoinder of causes of action, as the original complaint was upon an adjustment, and as amended, it declared upon a policy of insurance alone.   It also demurred to the amendment to the complaint upon the ground that first, it does not sufficiently specify the property alleged to have been insured and destroyed, and second, the amendment was a departure from the original complaint. These demurrers were overruled, and the defendant plead the general issue, and also the following special pleas :  (3) For further answer the defendant says,  before the fire mentioned in the complaint, the plaintiff had disposed of the property alleged to have been destroyed.   (4)  For further answer the defendant says that  the property mentioned in the complaint was not destroyed by fire as alleged in the said complaint.   (5)  For further answer the defendant says that after the policy named in the complaint was issued, the plaintiff executed a mortgage upon the three pool tables,  a part of the property insured, which rendered the said policy void under the terms and conditions thereof.   (6)   For further answer the defendant says that the plaintiff is not the owner of the policy of insurance sued upon in this case.   (7)   For further answer the defendant says that the property named in the policy was destroyed through the fault of the plaintiff, and hence the plaintiff can not recover in this suit.   (8) For further answer the defendant says that after the policy named in the complaint was issued, H. A. Feibelman, to whom said policy was issued, executed a mortgage to the South Side Savings Bank, a body corporate, upon the three pool tables named in the complaint, the same being a part of the property insured, which rendered said policy void under the terms and conditions thereof.   (9)   For further answer the defendant says that after the policy named in the complaint was issued and delived, H. A. Feibelman, to whom said policy was issued, before he transferred the same, executed a bill of sale, thereby conveying to the South Side Savings Bank the three pool tables named in the complaint, a part of the property insured, and thereby rendered said policy void under the terms and conditions thereof.   (10)  For further answer, the defendant says that, at the time the property named in the complaint was injured or destroyed by fire, the plaintiff did not own the policy of insurance

upon which this suit is brought. (11) For further answer to the complaint the defendant says that at the time this suit was brought, the plaintiff was not the owner of the policy which is the foundation of this suit, under which it is alleged that defendant adjusted plaintiff's loss at $1,403. (12) For further answer to the complaint the defendant says that H. A. Feibelman at the time of taking out the policy named in the complaint, misrepresented to defendant the true owner of the property alleged in the complaint to have been destroyed by fire. (13) For further answer to the complaint, the defendant says that the plaintiff never made proof of loss as required by the policy under which she sues. (14) For further answer to the second count of the complaint, the defendant says that by the terms of the policy sued on it is provided that no suit shall be maintained on said policy unless commenced within twelve months next after the fire; and defendant alleges that said count was filed more than twelve months next after the cause of action accrued by which plaintiff alleges the property named in the complaint was destroyed. (15) For further answer to the complaint the defendant says that E. Feibelman, the plaintiff in this suit, was not at the time of the alleged loss or damage by fire, the owner of the vinous, spirituous and malt liquors claimed in the complaint to have been destroyed by fire. (16) For further answer to the complaint, the defendant says that under and by the terms of the policy it is provided that said entire policy shall be void if the interest of the assured in the property insured be not truly stated therein. And the defendant avers that the interest of H. A. Feibelman in the property insured was not truly stated and by reason whereof, the said policy was void. (17) For further answer to the complaint, the defendant says that in the policy of insurance sued on, it was provided among other things and stated that the entire policy of insurance should be void if the insured concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein. And the defendant avers that H. A. Feibelman, the person insured in said policy and who transferred and assigned the same to the plaintiff, did

conceal in obtaining said insurance, a material fact from the defendant, namely, that he concealed the fact that a bill of sale, or chattel mortgage had at the time of the making of said insurance, been given on one or more of the pool tables which are mentioned and set out and covered by said policy of insurance, by said H. A. Feibelman, who claimed to be the owner of said property at the time said policy was issued, to the South Side Savings Bank. (18) For further answer to the complaint, the defendant says that, in the policy of insurance sued on, it was provided, amongst other things, and stated, that the entire policy of insurance should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein. And defendant avers that the interest of the insured in said property was not truly stated therein, in this: that a bill of sale or chattel mortgage had been previously given by H. A. Feibelman, the person to whom said policy of insurance was issued, and who had since transferred or assigned the same to the plaintiff, of one or more pool tables mentioned in said policy of insurance, and covered thereby. (19) For further answer to the complaint, defendant says that, in the policy of insurance sued on, it was provided, amongst other things, and stated, that the entire policy of insurance should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein, or in case of any fraud or false swearing by insured touching any matter relating to said insurance or the subject thereof, whether before or after a loss under said policy. And defendant avers that the plaintiff did on the 21st day of January, 1892, before one D. C. Buckshaw, a notary public in and for the county of Jefferson, state of Alabama, after said loss is alleged to have occurred, under oath state, among other things, that plaintiff had renewed her license (meaning thereby a license to retail vinous, spirituous, and malt liquors, as required by the laws of the state of Alabama) for the year 1892, having done so on the 12th day of January, 1892. Defendant avers that said statement was made under oath

before the said D. C. Buckshaw, a notary public, as aforesaid, and that said statement so made was rendered to this defendant with a view and for the purpose of collecting the insurance covered by the policy of insurance sued on, and that the same was false. (20) For further answer to the complaint, the defendant says that, in the policy of insurance sued on, it was provided, amongst other things, and stated, that the entire policy of insurance should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein, or in case of any fraud or false swearing by insured touching any matter relating to said insurance or the subject thereof, whether before or after a loss under said policy. And defendant avers that the plaintiff did, on the 21st day of January, 1892, before one D. C. Buckshaw, a notary public in and for he county of Jefferson, state of Alabama, after said loss is alleged to have occurred, under oath state, amongst other things, that the stock of liquors, etc., also fixtures therein contained (meaning thereby the stock of liquors and fixtures contained in the storehouse No. 1920 2d Ave., the said stock of liquors and fixtures being the same which were insured by the policy of insurance sued on), 'belonged to me personally,' and that 'no one else, directly or indirectly, had any interest in the same whatsoever,' which said statement was made under oath, in writing, before the said D. C. Buckshaw, a notary public, as aforesaid; said statement being made by the plaintiff to this defendant, and made by said plaintiff for the purpose of procuring and obtaining the insurance mentioned in said policy. And plaintiff avers that said statement was false, in this: that the South Side Savings Bank did have an interest, either directly or indirectly, in one or more of the pool tables mentioned and set out in said policy of insurance. (21) For further answer to the complaint, the defendant says that, in the policy of insurance sued on, it was provided, amongst other things, and stated, that the entire policy of insurance should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the prop-

erty be not truly stated therein, or in case of any fraud or false swearing by insured touching any matter relating to said insurance or the subject thereof, whether before or after a loss under said policy. And defendant avers that the plaintiff did, on the 21st day of January, 1892, before one D. C. Buckshaw, a notary public in and for the county of Jefferson, state of Alabama, after said loss is alleged to have occurred, under oath state, among other things, that there was on hand at the time of said fire the following property, namely [setting out the items of property alleged to be in the barroom at the time of the fire]. And defendant avers that said statement was false, there not being that amount of property or vinous, spirituous, and malt liquors contained in said building at the time of said loss. And defendant further avers that said representation was made by the plaintiff to defendant in order to obtain from defendant the insurance on the policy mentioned and set out in the complaint. (22) And defendant, for futher answer to the second count of the complaint, says that, in and by the policy of insurance sued on, it was provided that no suit or action on said policy for the recovery of any claim should be sustainable in any court of law or equity until after a full compliance by assured of all of the foregoing requirements (meaning the requirements set out in said policy), nor unless said suit or action be commenced within 12 months next after the fire. And defendant avers that this suit or action, as set out in said count, was not commenced within 12 months next after the fire by which said property was damaged or destroyed."

The plaintiff moved to strike the sixth, tenth, and fifteenth pleas from the file, because they were not sworn to, and moved strike the twenty-first plea from the file, because the defense set up in said plea was available under the general issue. The court overruled the motion to strike the sixth, tenth, and fifteenth pleas, and sustained the motion to strike the twenty-first plea, from the file. The plaintiff demurred to the fourteenth plea on the grounds—First, that the plea was no answer to the complaint; second, that the plea fails to aver that the suit on the policy was not commenced within 12 months after the cause of action accrued; third, that the amendment by the additional count in the complaint

relates back to the commencement of the suit, which was within 12 months after the cause of action had accrued under said policy. To the nineteenth plea the plaintiff demurred, on the grounds—First, that the facts averred in said plea present no defense to the cause of action as stated in plaintiff's complaint; and, second, that the facts averred therein are not material to the insurance or the subject thereof. To the twentieth plea the plaintiff demurred, on the grounds—First, that the plea presents no proper issue; and, second, that it presents immaterial matter. The demurrers to the fourteenth plea were sustained, and those to the nineteenth and twentieth pleas were overruled. To the thirteenth plea the plaintiff filed the following replication: "That the proof of loss as required by the policy, and under which she sues, was waived by the defendant." Upon a demurrer being sustained to this replication, the plaintiff amended his replication as follows: "Comes the plaintiff in the above-entitled cause, and, leave of the court being obtained, amends the replication, and says that the proof of loss as required by the policy was waived by the acts and conduct of the defendant, that on, to-wit, the 21st day of January, 1892, after the fire occurred, the defendant's adjuster, one A. D. Witherbee, visited the place where the fire occurred, and examined the plaintiff's books of account, and had plaintiff's agent to make an affidavit of the amount of loss, and ascertained the loss to be the sum sued for, and offered to pay plaintiff's agent a sum less than the amount claimed under the policy." The defendant demurred to the amended replication, but this demurrer is not shown to have been ruled upon. Thereafter the defendant filed a rejoinder to the plaintiff's replication to the thirteenth plea, which was as follows: "For rejoinder to plaintiff's said replication, the defendant says the policy of insurance provides, among other things: "This company [meaning defendant] shall not be held to have waived any provision or conditions of this policy, or any forfeiture thereof, by any requirement or act or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by

appraisers, when appraisal has been required, and this the defendant is ready to verify." The plaintiff moved to strike this rejoinder from the file, on the ground that it is immeterial, and presents no material issue to plaintiff's replication. This motion was granted, and the rejoinder was stricken from the file. On May 25, 1893, the defendant filed the following plea: "Comes the defendant, and for answer to the complaint, says that the plaintiff was not at the time of the commencement of this suit the rightful owner of the policy of insurance named in the complaint, and this the defendant is ready to verify." This plea was verified by the affidavit of Thomas Hardeman, who was the agent of the defendant. Trial was had upon issue joined upon the pleas of the general issue, and the 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 15th, 16th, 17th, 18th, 19th, 20th 22d, and the additional plea filed on May 25, 1893, and on the plaintiff's replication to defendant's 13th plea.

The policy of insurance upon which the action was brought was introduced in evidence. This policy of insurance was issued by the defendant, the Manchester Fire Assurance Company, on September 3, 1891, to H. A. Feibelman, for a term of one year, and insured against loss or damage by fire on the following described property: "$600 on his fixtures, sideboard, glasses, beer cooler, screen, cash register, show cases, and other fixtures; $200 on his pool tables, being $100 each; $700 on his stock of wine, brandy, whisky, beer, tobacco, and cigars, and such other merchandise, not more hazardous, as is usual in this trade,—all contained in the brick, metal-roof, one-story building, No. 1920 Second avenue, Birmingham, Ala." On the back of this policy there were the following indorsements: "The interest of H. A. Feibelman, as owner of property covered by the policy, is hereby assigned to E. Feibelman, subject to the consent of the Manchester Fire Assurance Company, of Manchester, England, dated January 1, 1892." "The Manchester Fire Insurance Company, of Manchester, England, hereby consents that the interest of H. A. Feibelman, as owner of the property covered by this policy, be assigned to E. Feibelman. Dated January 5th, 1892. Thomas Hardeman and Company." "The interest of E. Feibelman. as owner of the property covered by this policy, is hereby assigned to L.

[Feibelman v. Manchester Fire Assurance Co ]

A. May, president of the South Side Savings Bank, subject to the consent of Manchester Fire Assurance Company, of Manchester, England. January 21st, 1892, E. Feibelman. Witness: A. Y. Sharpe, Jr." M.L Feibelman, for the plaintiff, testified that he was manager of the saloon which was owned by his brother H. A. Feibelman, and that on January 1st, 1892, his said brother sold the business and stock of goods in the saloon, to his stepmother, E. Feibelman, the plaintiff, and after that, the witness continued to manage the business for the plaintiff; that the policy of insurance sued upon was issued to H. A. Feibelman in September, 1891, and that it was assigned by him to plaintiff on the day of the said sale to her, and the defendants consent to the assignment was made on January 5th, 1892. The bill of sale above referred to was then offered in evidence. This witness further testified that between eight and nine o'clock, on Sunday night, January 10th, 1892, the building in which said stock of goods was situated, caught fire, and the stock was damaged thereby; that on the next day, he notified the agent of defendant of the fire, who said that the company's adjuster would be there in a few days, and on January 20th, one Witherbee, who was introduced to witness by said agent as the adjuster of the defendant, examined some of the property which was damaged, and at that time, the witness offered to Witherbee a sworn statement made by him of the loss, but it was not received, because Witherbee said witness must show his authority from plaintiff for making the statement. This authority was never obtained. Afterwards, Witherbee required witness to make affidavit of the correctness of the statement of loss, which he did, and thereupon Witherbee told witness that if he would come back that evening, and would knock off interest for sixty days, he would give him a check for the amount shown by the statement; Witness returned that evening, but Witherbee then refused to pay, saying that he had been requested not to do so, as witness would be arrested soon for the arson. The plaintiff then asked this witness whether or not Witherbee was the adjuster for the defendant. Witness answered that he told him that he was. Defendant moved to strike out the answer on the ground that it was hearsay, which motion was granted, and plaintiff ex-

cepted. Upon this witness further testifying that With-erbee made proof of loss in his own handwriting, a copy of what purported to be the paper was shown him, but he could not identify it as a copy of the original paper which he had signed and made affidavit to. Ferguson, the State Solicitor was then examined, and stated that a paper had been given him by one Harde-man, the local agent of the defendant, which he used in an investigation of a charge of arson against M. J. Feibel-man, that he had made search for it where such papers are usually kept, and could not find it; that he did not remember the contents of the paper. What purported to be a copy of such paper was then handed him, and he said that he could not identify it as being a copy. The defendant then elicited from the witness, the fact that the plaintiff had not taken out the license required by law for the carrying on of the business in which the insured property was used. The plaintiff objected to the question bringing out this evidence, and also moved to exclude it. Her objection and motion were each overruled. M. J. Feibelman further testified that he never saw Witherbee after the day of the adjustment of the loss, until he came to the jail where the witness was confined upon the charge of arson, and that then With-erbee offered to compromise. The defendant moved to exclude the statement that Witherbee offered to com-promise. This motion was granted, and plaintiff ex-cepted. The witness further testified that he was arrested for arson, charged with having set fire to the building involved in this suit, and while he was in jail, Witherbee the adjuster, called there to see him, and stated that if he would give up the policy, he would pay him $175, and this being declined, Witherbee then offered $200, which was also declined. Upon it being shown that this offer was part of the alleged offer to compromise, it was on motion of defendant, excluded. To refresh the witness recollection as to the time when the offer of compromise by Witherbee occurred, the plaintiff offered to hand to the witness the original in-dictment and warrant of arrest that was preferred against him for the arson of said property; but upon the ob-jection of the defendant, on the ground that it was im-material and irrelevant, the court sustained the objec-tion, and the plaintiff duly excepted. The witness was

then asked the following question: "Did Witherbee call on you while you were in jail?" "Did or not Mr. Hardeman and Mr. Witherbee come to the jail to see you?" The defendant separately objected to each of these questions, and, upon the court's sustaining each of the objections, the plaintiff separately excepted. There was other testimony for the plaintiff tending to show that the property which was covered by the insurance policy issued by the defendant was of the value alleged in the policy, and was the property of the plaintiff at the time of the fire, and had not been transferred or assigned by her. There were several question asked the witness Hardeman, who was introduced by the plaintiff, for the purpose of proving the fact that Witherbee was the company's adjuster, and exceptions were reserved to the court's sustaining the defendant's objections to the several questions. On the further progress of the case, however, it was admitted that Hardeman was the adjuster of the plaintiff, and it is deemed unnecessary to set out in detail the facts pertaining to these exceptions.

The evidence for the defendant tended to show that the part of the property which was shown by the statement filed by M. J. Feibelman, as the agent of E. Feibelman, to have been in the saloon at the time of the fire, was not, in fact, there; that instead of there being several barrels of whisky and other liquors, as alleged in said statement, there was, in fact, but one barrel of whisky, and the other barrels, as testified to by several witness of the defendant, were empty at the time of the fire. There was other evidence for the defendant tending to incriminate M. J. Feibelman with the crime of arson, in having set fire to the building. Rollo, a city fireman, testified as a witness: "The fire seemed to have started about the partition. It is not usual to see fire all over a building. The house appeared to have burned all over. The fire seemed to have come from some combustible matter thrown over walls and furniture." This witness was then asked the following question: "How many fires were there while this man [referring to M. J. Feibelman] was there?" The plaintiff objected to this question, on the ground that it called for immaterial and irrelevant evidence, and duly excepted to the court's overruling his objection. The witness answered that

there were two or three fires in the same house during the year 1891, while M. J. Feibelman had the management of the saloon. Buckshaw, a notary public, before whom M. J. Feibelman made his affidavit to the claim of loss, was introduced as a witness in behalf of the defendant, and testified that he was called into the office of Thomas Hardeman & Co., the local agent of the defendant company, and there were present Mr. Witherbee, M. J. Feibelman, and Mr. Hardeman; that M. J. Feibelman made an affidavit of proof of loss, and signed the name E. Feibelman, but there was no question raised as to the name. A paper purporting to be a copy of the paper that was signed by Feibelman, and handed the witness, was offered in evidence, to which the plaintiff objected, on the ground that it was illegal and incompetent. It was shown to the court that the original was lost, and that, after a diligent search, it could not be found. The court overruled the objection of the defendant, and to this ruling the plaintiff duly excepted. Subsequently this paper was introduced in evidence against the objection and exception of the plaintiff. Upon the examination of one of the witnesses for the defendant, who testified that he was present when M. J. Feibelman was tried on the charge of arson, under an indictment charging him with having set fire to the house in question, the plaintiff asked said witness the following question: "Was or not said M. J. Feibelman acquitted at that trial?" The defendant objected, on the ground that the question called for illegal, irrelevant, and immaterial evidence. The court sustained the objection, and the plaintiff duly excepted.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1) . "If the jury believe from the evidence that the fixtures, sideboard, glasses, beer cooler, screen, cash register, show cases, and other fixtures, the articles destroyed by the fire January 10, 1892, and insured under policy of defendant, were destroyed by fire without the procurement, consent, or knowledge of the plaintiff, Feibelman, then their verdict should be in favor of plaintiff for the amount of the loss insured under the said policy, and provided the jury should further conclude that the defendant had

by its act, conduct, or otherwise waived the formal proofs of loss." (2) "If the jury believe from the evidence that the two pool tables insured under the policy were destroyed, in value to the amount of what they are insured for, and they should further believe that the defendant waived the proofs of loss, and should further believe that said property was destroyed without knowledge, consent, privity, connivance, or procurement of plaintiff, then they should find for the plaintiff to the amount of the insurance on said tables." (3) "If the jury believe from the evidence that the stock of wine, brandy, whisky, tobacco, and cigars, and such other merchandise not more hazardous than is usual in this trade, was destroyed by fire on January 10th, 1892, and should from the evidence believe that defendant waived proof of loss, and that said property was destroyed without the knowledge, consent, privity or procurement of the plaintiff, E. Feibelman, and they should further believe that said articles had any value, and they were destroyed by fire, or any part of them, they should find for the plaintiff for whatever value the said articles destroyed amounted to at the time of said fire, and which were covered by the policy of insurance sued on under this policy. (4) There being no evidence in this case to show that the plaintiff, E. Feibelman, knew of, consented to, was party to, or procured the articles insured to be destroyed by fire on the night of January 10th, 1892, and if you should find from the proof that said defendant company had waived the formal proof of loss, then you should find for the plaintiff whatever damages the plaintiff may have sustained according to the testimony in the case, not to exceed the amount of insurance on the respective articles named in the policy. (5) If the jury believe from the evidence that the adjuster for the insurance company viewed the premises where the fire occurred, and subsequently had an examination of plaintiff's agent under oath, concerning the loss under the policy, then that would be a waiver of formal proof of loss under this policy; and I so charge you. (6) If the jury believe from the evidence that the adjuster, Witherbee, at or about the time of the examination of M. J. Feibelman under oath, to-wit, about the 21st day of January, 1892, refused to pay anything upon the policy, then that was a waiver of the formal proof of loss

13

required under the policy.

Upon the written request of the defendant, the court gave the following charges : (1) Under the terms of the policy sued on, the plaintiff was required to make proof of loss, and the making of such proof in accordance with the terms of the policy, was a condition precedent to plaintiff's right to recover, unless such proof of loss was waived by the defendant ; and if the jury find that proof of loss was not made by the plaintiff, and that the defendant did not waive such proof of loss, then the plaintiff can not recover, and the jury must return a verdict for the defendant. (2) If the jury believe from the evidence that the plaintiff was not the true owner of the property insured, and alleged to have been injured or destroyed by fire, then she can not recover, and the jury must return a verdict for the defendant.

The jury having retired to make up their verdict, came again into court, and were there further charged by the judge, the attorneys of both plaintiff and defendant being then absent. A verdict was rendered for the defendant, and thereupon the plaintiff moved the court to set aside the verdict, and to grant a new trial, upon the grounds that the verdict was contrary to the evidence, was contrary to the law as charged by the court, and for further grounds, that the court erred in its ruling upon demurrers, upon the admission of evidence, and in the charges given the jury, and also that it was error for the court to give instructions to the jury after they had retired, and in the absence of the attorney for the plaintiff. The motion for a new trial was denied, and the plaintiff appealed, assigning errors as indicated by the opinion.

BUSH & BROWN, for appellant.—The insurance company took all risks of fire, and even if the property was burned by M. J. Feibelman, unless this was done with the consent, connivance, or privity of plaintiff, it is no defense to the action —Richards on Ins., § 128 ; *Midland Ins. Co. v. Smith,* 6 Q. B. D. 568 ; *Carow v. Continental Ins. Co.,* 57 Wis. 56.

The question of the ownership of the pool tabfes did not affect the other property ; the policy made separate valuations, and was therefore divisible.—*Merrill v. Agricultural Ins. Co.,* 73 N. Y. 42 ; *Schiester v. Ag. Ins. Co.,* 102 N. Y. 260.

[Feibelman v. Manchester Fire Assurance Co.]

The evidence shows that proof of loss was waived by the defendant.—*Badger v. Phenix Ins. Co.*, 49 Wis. 400; *Central City Ins. Co. v. Oates*, 86 Ala. 558.

The time for bringing suit was waived.—Richards Fire, Life and Accident Ins., par. 80; *Searle v. Dwelling and House Ins. Co.*, 152 Mass. 263; *Goodwin v. Mass. Mut. Ins. Co.*, 73 N. Y.; 105 Mass. 570; 148 Mass. 61.

The denial of liability by the adjuster, dispensed with all preliminary proof.—80 Ala. 577.

The judge erred in instructing the jury in the absence of the attorney of plaintiff, they having once retired.— *Commonwealth v. Snelling*, 15 Pick. 334; Thompson on Trials, p. 1719; *Sergeant v. Roberts*, 1 Pick. 337; 2 Wat. & Graham on New Trials, 355-56; *Read v. City of Cambridge*, 124 Mass. 567; Sup. Ct. N. Y. Rep. 159; *Davis v. Fish*, 1 G. Greene (Iowa), 406; *Johnson v. State*, 100 Ala. 55.

The pleas denying plaintiff's ownership of the policy should have been sworn to.

LANE & WHITE, *contra.*—Unless H. A. Feibelman had a license to carry on the business, the sale to plaintiff was void, and she had no interest in the property.

Offers of compromise are not admissible in evidence.

Testimony of M. J. Feibelman as to what Witherbee did was properly excluded, as defendant could not be bound by declarations of its agent which were no part of the *res gestæ.*—*Bynum v. Southern Pump Co.*, 63 Ala. 462; *A. G. S. R. R. Co. v. Hawk*, 72 Ala. 112.

A witness can not refer to a paper to refresh his memory unless he has some knowledge of the correctness of the paper.—1 Gr. Ev., 436,

If M. J. Feibelman was managing the business for plaintiff, and he destroyed the property, the presumption is that it was done with connivance of plaintiff.—*Columbia Ins. Co. v. Lawrence*, 10 Peters, 507; *Karow v. Continental Ins. Co.*, 57 Wis. 56.

There was no proof that the adjuster had the authority to bind the defendant.—2 Wood Fire Ins., § 423.

As the instructions given by the judge to the jury after their retirement, asserted the law correctly, no damage was done the plaintiff thereby, and it furnishes no ground for reversal.—Graham & Waterman on New Trials, 356-57-58; *Goldsmith v. Solomon*, 2 Strob. 296;

*Thayer v. Van Vleet*, 5 Johnson, (N. Y.) 111; *Bassett v. Saulsberry*, 28 N. H. 348.

HEAD, J.—The return to the *certiorari* brings up the original complaint in a very different shape from that in which it was presented to us by the original record, when the case was formerly submitted. It now conforms, substantially, to the Code form, on a policy of fire insurance (Form 13, Code of 1886 p. 792). If it be true that this form of complaint implies an action, in the name of the assured, mentioned in the policy, when the assignee of the policy sues, the complaint ought to allege the assignment to the plaintiff, made in accordance with the authority to assign, contained in the policy.—*Fire Insurance Co. v. Felrath*, 77 Ala. 194. Hence, taking this to be the true construction of the form, if there was nothing else in the record to produce a different result, the plaintiff would fail in the action, by reason of the variance, shown when it developed in proof that the suit was in the name of an assignee of the original assured. In the present case, however, the defendant pleaded that the plaintiff was not, at the time of the commencement of the suit, the rightful owner of the policy of insurance named in the complaint; and, upon this plea, the plaintiff joined issue, by general replication, which is, in effect, to allege that she was, at the time of the commencement of the suit, the rightful owner of the policy. Thus, the matter of ownership was, by pleading, put in issue between the parties, and no objection was made by defendant to the manner and form in which the issue was made up.

The refusal of the court to strike the 6th plea, because not verified, did not prejudice the plaintiff, for the reason that another plea covering the same defense, properly verified, was interposed and issue joined thereon.

The 10th and 15th pleas did not require verification, and the motion to strike them was properly over-ruled.

The defendant's 19th plea alleged, among other things stated in the condition, that it was stipulated in a certain condition, set forth in the policy, that in case of any fraud or false swearing by insured, touching any matter relating to said insurance, or the subject thereof, whether before or after a loss under the policy, the insurance should be void; and the plea alleges that the plaintiff

did, on the 21st day of January, 1892, before a notary
tary public, after said loss is alleged to have occurred,
state under oath, among other things, that plaintiff had
renewed her license, (meaning thereby a license to re-
tail vinous, spirituous and malt liquors, as required by
the laws of the State of Alabama) for the year 1892,
having done so on the 12th day of January, 1892; that
said statement so made, was rendered to the defendant
with the view, and for the purpose, of collecting the in-
surance covered by the policy sued on, and that the same
was false. A demurrer, (which the court overruled) in
a sufficient way, challenges the materiality of the
alleged false statement. We are unable to see what the
plaintiff's license, or the want of it, had to do with the
insurance. There is no averment in the complaint or
plea, which establishes any relation between the license
and the insurance, or that the former had any bearing
upon the latter. The plaintiff (if her case was perfect
in other material respects) was entitled to collect the in-
surance money, whether she had taken out the license
or not, so far as anything brought to view, in the plead-
ings under consideration, shows. The false statement,
therefore, constituted no defense, and the demurrer
ought to have been sustained.

The 20th plea sets out the same condition, and alleges
that on January 21, 1892, after the loss occurred, the
plaintiff stated, under oath, before a notary (which
statement was made to defendant for the same purpose,
as alleged in plea 19) that the ''liquors, &c., also fixtures
therein contained, (meaning thereby the stock of liquors
and fixtures contained in the storehouse No. 1920 2nd
Ave., the said stock of liquors and fixtures being the
same which were insured by the policy of insurance sued
on) 'belonged to me personally,'' and that, 'no one else,
directly or indirectly, had any interest in the same what-
ever;'' which statement, was false, in this, that the
South Side Savings Bank did have an interest, either
directly or indirectly, in one or more of the pool tables,
mentioned in the policy. The complaint describes the
"fixtures" and pool tables, as separate articles, insured
in separate amounts. The plaintiff, it is observed, did
not affirm, in the statement alleged to have been false,
that no one else had any interest in the *pool tables*. The
plea, therefore, does not really show that the plaintiff's

[Feibelman v. Manchester Fire Assurance Co.]

statement was false. Issue upon its averments would consequently, have been wholly immaterial. The demurrer ought to have been sustained.

The demurrer of defendant to the original replication to the 13th plea, is not set out in the record. As the replication was demurrable for its failure to allege the facts constituting the waiver of the proofs of loss, we will presume in favor of the ruling of the court below, that the demurrer assigned that ground. There was no ruling on the demurrer to the amended replication; hence, we will presume issue was joined thereon, the special rejoinder having been stricken from the file.

The exceptions reserved upon the admissibility of evidence as to whether Witherbee was defendant's adjuster, in the matter of adjusting the loss, were all obviated by the subsequent admission of defendant's counsel, on the trial, that he was such adjuster.

There was no error in permitting plaintiff's witness, Hardeman, to testify, on cross-examination, as to what whisky, in barrels, there was on hand the next morning after the fire, at the place where the fire occurred. The plaintiff, on rebutting examination of Hardeman, put the following to him in the form of a question : "Your recollection about the location of the show case is about the same as about the other matters to which you have testified?" Defendant objected, on the ground that plaintiff was trying to impeach her own witness. We do not see wherein the question tended to impeach the witness. Although her witness, it was competent for plaintiff to show that he was mistaken in reference to any matter unfavorable to her, to which he had testified, and to elicit from the witness, if she could, the extent or character of his recollection. We think the court erred in sustaining the objection on the ground stated.

In view of the issue joined on the 19th plea, which the court held good on demurrer, it was not proper for the plaintiff to object to proof by the defendant that plaintiff did not take out license on January 12th, 1892, that being an issue tendered by the plea. The error on the part of the court, goes back to its ruling on the demurrer.

Upon well settled principles, it was not error to exclude evidence of an offer, on the part of defendant's adjuster, to compromise the plaintiff's demand. What was

[Feibelman v. Manchester Fire Assurance Co.]

said at the jail was, therefore, properly excluded. The warrant of arrest and indictment, for the purpose for which they were offered, were also properly excluded. It does not appear that plaintiff was injured by the refusal of the court below to allow the questions as to Wither- bee's and Hardeman's visit to the jail. It was not dis- puted that Witherbee went there to see M. J. Feibelman, the plaintiff's general agent and manager, who was therein imprisoned, and there was no offer to prove what occurred with Hardeman, if anything, if he went there. Indeed, it was not disputed, as elsewhere shown, that Hardeman did go to the jail.

M. J. Feibelman was examined as a witness for plain- tiff, which subjected him to impeachment by defendant by proof of his character. But, character is a fact which is proved by another fact—general reputation. It can- not be shown by evidence of particular facts. 3 Am. & Eng. Enc. Law 114; *Birmingham U. Ry. Co. v. Hale*, 90 Ala. 8; *Holland v. Barnes*, 53 Ala. 83. It was, therefore, incompetent for defendant to prove that two or three fires occurred in the saloon, in 1891, while said Feibel- man was in the management and control of it. The court erred in permitting such proof.

When defendant's witness, Buckshaw, was first upon the stand, he testified that, being a notary public, he was called into the office of Thomas Hardeman, defend- ant's local agent, and there were present, Mr. Wither- bee, Mr. M. J. Feibelman and Mr. Hardeman. Mr. Feibelman made an affidavit and signed the name of E. Feibelman (the plaintiff), and there was no question raised to the name. A paper "purporting to be a copy of the paper that was referred to" (as the bill of excep- tion recites) was then handed to the witness, and offered in evidence, against the objection and exception of the plaintiff. "It was shown to the court that the original was lost, before the copy was admitted, and that after diligent search it could not be found." The contents of the paper do not appear in the record, but we would pre- sume, to support the ruling of the court, that the matter was relevant. There was no proof, however, that the paper was, in fact, a substantial copy of the original. The objection, for illegality and incompetency, was, therefore, well taken, and the court erred in overruling it. We are persuaded the paper is the same which the

same witness, at a latter stage of the trial, when called to the stand a second time, identified as a true copy of a lost paper, and which was admitted in evidence and set in the bill of exceptions ; but it does not affirmatively so appear, and we cannot so hold. There was no error in admitting the last named paper. It tended to establish the allegations of the 19th plea. The error, as we said before, goes back to the ruling on the demurrer to the plea. We do not say the paper was not admissable for any other purpose. It was shown to have been a true copy of the original which had been lost and could not be found.

It was not competent nor material for plaintiff to prove by M. J. Feibelman, as supposed, that he did not offer to Witherbee to surrender the policy, if he would drop proceedings against him, unless there had been evidence, on the other side, that he had made such an offer. The ground upon which the objection to the question was sustained, however, was improper. The question did not seek, in any way, to impeach Witherbee, and no such predicate, as supposed, was necessary. A predicate, (such as was in mind, in this ruling) to "*contradict*" a witness, as the objection puts it, is not required.

A policeman was permitted to testify, against the objection and exception of the plaintiff, after stating that he remained at the place of the fire all of the night on which it occurred, that "a fire without combustible material could not burn as this one did." Another witness, Rollo, a city fireman, had, just before, testified for defendant, that the house appeared to have burned all over; that it is not usual to see fire all over the building, and that, in this instance, it seemed to have come from some combustible matter thrown over the walls and furniture. The testimony of the policeman, was, therefore, evidently intended, and did tend, to produce, ih the mind of the jury, the inference that some highly combustible material had been applied, to facilitate the destruction of the building. There is no evidence in the record and none was proposed to be introduced, tending to connect the plaintiff, in any way, with the burning of the property. She resided in another State, and the property was in sole charge and custody of her agent, M. J. Feibelman. If the property was fraudulently de-

stroyed all the criminating evidence, on that subject, tends to show it was committed by M. J. Feibelman, without any proof of knowledge thereof, or participation therein, by the plaintiff. There is no provision in the policy that plaintiff should be responsible for the fraudulent destruction of the property by her agent, under such circumstances. The authorities are meagre upon the question, but we have given it due consideration, in conference, and are of the opinion that such losses are within the perils of the policy, unless specially excepted therefrom by some clause or condition of the policy. *Henderson v. Ins. Co.*, 10 Rab. (La.) 164, S. C. 43 Am. Dec. 176 ; *Perry v. Mechanics Mut. Ins. Co.*, 11 Feb. Rep. 485 ; *Plinsky v. Germania F. Ins. Co.*, 32 Fed. Rep. 47. The case of *Midland Ins. Co. v. Smith*, 6 Law Reports, Q. B. Div. 561, was one of a felonious burning of the property by the wife of the assured. The judge said : "I have no hesitation in saying that it appears to me to be upon principle perfectly clear and free from doubt that such a loss would be covered by an ordinary policy against loss by fire ; under such a policy the company would be liable for every loss caused by fire unless the fire itself were caused and procured by the wilful act of the assured himself, or some one acting with his privity and consent. In order to escape from responsibility for such a loss as the present the company ought to introduce into their policy an express exception." Evidence, therefore, implicating M. J. Feibelman in the alleged fraud, is immaterial and irrelevant, unless connected with proof of guilty complicity therein, on the part of the plaintiff herself. The acquittal of M. Feibelman of the charge of arson has no relevancy to the case.

The first four charges requested by the plaintiff were bad for several reasons : First, they ignore the issue joined on the 19th plea. Indeed, that plea being sustained by the undisputed evidence, the general charge could have been given for the defendant. Though the plaintiff was erroneously compelled, by the ruling of the court on demurrer, to join in the issue tendered by this plea, or suffer judgment against her, yet the case, in its subsequent stages, must have been tried as if the ruling was free from error. The plaintiff's remedy was to assign the ruling on the demurrer, as error, in this court, as she has done. Second, the 13th plea, which alleges

the failure of plaintiff to furnish the required proofs of loss, was answered by the special replication, which sets up the particular facts relied upon by the plaintiff, as constituting the waiver of preliminary proofs. The replication confesses the plea, and avoids it by the allegation of these special facts; consequently, these facts must be proved, as alleged. They are, that after the fire occurred, on to-wit, the 21st day of January, 1892, the defendant's adjuster, one A. D. Witherbee, visited the place where the fire occurred, and examined the plaintiff's books of account, and had plaintiff's agent to make an affidavit of the amount of loss and ascertain the loss to be the sum sued for, and offered to pay plaintiff's agent a sum less than the amount claimed under the policy. The date, January 21st, 1892, being alleged under a *videlicet*, the plaintiff would not be confined to strict proof thereof. The charges under consideration, would dispense with the preliminary proof, if waived by any act or conduct of the defendant, whether those alleged in the replication or not. Taking the whole evidence as it appeared before the jury, if the issue had not been restricted as it was by the replication, it could well have been submitted to the jury to determine whether the proofs of loss had not been waived by a repudiation, by the defendant, of all liability upon the policy. The instruction should have been restricted, as was the replication. Agaiu, the replication failed, entirely, in the avoidance, for want of evidence tending to prove the material averment, that Witherbee examined the plaintiff's books of account—thus leaving the plea confessed; for which reason the general charge could have been given for the defendant.

What we have said will render apparent the vices of charges 5 and 6 requested by the plaintiff.

There was no error, prejudicial to the plaintiff, in the first charge given for the defendant. The second, so given, was abstract, as all the evidence on the subject showed that the plaintiff was the true owner of the property insured and alleged to have been injured or destroyed by the fire.

After the jury had been in retirement, for sometime, considering of their verdict, they appeared in the court room, about 7 o'clock P. M. and made known to the court that they could not agree; and thereupon, at the request of a juror, or moved by something said by a juror, the

court proceeded to give the jury further or additional in-
structions in the law governing some issue or issues in
the cause; and again sent them into retirement to con-
sider of their verdict. At the time of these proceedings,
the plaintiff's counsel, who had conducted the trial
throughout in her behalf, were not present, and had no
knowledge or information of the proceedings. The court
made no inquiry concerning them, and took no steps to
notify or give them an opportunity to be present; and
there was no special circumstance or emergency which
reasonably prevented giving them notice and opportunity
to be present, if ordinary effort had been made to that
end. There is nothing to show that they were ever in-
formed of the proceedings until after the jury had ren-
dered their verdict and been discharged. These facts
were made the basis of a motion for a new trial, which
the court overruled; to which ruling the plaintiff excepted.
This action on the part of the court was, in effect, we
think, a denial to the plaintiff, of the constitutional right
to prosecute the cause, by counsel, as guaranteed to her
by the 11th section of the bill of rights.—*Kuhl v. Long*,
102 Ala. 563.

We can not inquire, in such a case, what instructions
were given by the court to the jury—whether they were
correct or incorrect, prejudicial or otherwise. We can
not be informed of their nature or effect by lawful or con-
stitutional methods. The counsel not being present to
observe the proceedings of the court and learn, for them-
selves, what transpired, and by their advice and counsel,
it may be, give shape to the action of the court, the plain-
tiff can have no just and fair representation, indeed, no
constitutional representation by counsel, in making up
the record for the presentation of the illegal proceedings
to this court for review. If the rule be adopted that this
court will inquire and ascertain what the instructions
were—whether correct or incorrect, prejudicial or other-
wise, and affirm or reverse according to that test, we
perceive, at once, the injury which may be done the
plaintiff, in the disadvantage to which her counsel may
be subjected, in securing a correct bill of exceptions,
either at the hands of the presiding judge, or by pro-
ceedings, in this court, to establish it, by reason of the
fact that they were not present to hear and know what
instructions were really given. Will the plaintiff be re-

[Feibelman v. Manchester Fire Assurance Co.]

quired, to have her counsel seek and learn from such
evidence as may be possible of attainment—evidence of
persons charged with no duty, in her behalf, to closely
observe and understand the proceedings—what legal in-
structions were given to the jury by the court? Qualifi-
cation to comprehend and reproduce, in their substance
and effect, legal instructions to a jury, requires, if not
special legal skill, close attention to the trial throughout,
and a thorough understanding of the case developed, in
all its parts, and the relation of the several parts to, and
their bearing upon, each other. Who, upon a casual
and disinterested hearing of judicial proceedings, can
correctly reproduce them? Deeming it so valuable, the
organic law secures to every suitor, the right to have
trained and learned counsel, of his own selection, to per-
form these difficult and important duties in his behalf,
and nothing will be permitted to take away the right,
nor, in the least, impair it. The only safe course, there-
fore, when it is established that the court, without some
overruling necessity therefor, gave instructions to the
jury, or injected into the cause a material element of its
trial, in the absence of the complaining suitor's counsel,
engaged in representing him on the trial, and without
reasonable notice to them and opportunity to be present,
is to withhold all inquiry and investigation into the cor-
rectness of the instructions or action of the court, and
treat them as conclusively prejudicial, by reason of the
suitor's deprivation of his constitutional right. More-
over, if the instructions could, with a due observance of
this constitutional right, be properly certified to us, we
could not consider them, consistently with the law,
in the absence of exceptions duly reserved. The
right to accept is taken away. The right to ask coun-
ter or explanatory instructions, and to except to their re-
fusal, is taken away. The jurisdiction of this court to
revise the proceedings is rendered inoperative. The rule
we declare will be applied, though, at the close of the
testimony, there was nothing to submit to the jury but
the credibility of undisputed evidence. The presence of
the plaintiff's agent at the proceedings complained of,
can make no difference. He was not the plaintiff's legal
counsel; probably was not aware that the proceedings
were illegal. At all events, he was not the one to know
or speak. Nor, was the offer of the court to give the

plaintiff an exception to the instruction available against the motion. Exceptions are required, not as matters of form. They are to give the court opportunity to eradicate the error from the jury's mind. After the verdict rendered and jury discharged, an exception amounts to nothing. The motion for a new trial ought to have been granted.

Reversed and remanded.