MOORE, Chief Justice.
Anita Marion (“Marion”) sued Noland Hospital Birmingham, LLC, and Noland Health Services, Inc, (hereinafter referred to collectively as “Noland”), Walter R. Ross, Jr., M.D., and Bernis Simmons, M.D., in the Jefferson Circuit Court seeking damages resulting from the death of her husband, Arthur Marion (“Arthur”). Following a trial, the jury returned a verdict in .favor of Dr. Simmons but against Dr. Ross and Noland. Dr. Ross and No-land, in cases no. 1140604 and no. 1140605, respectively, appeal from the judgments against them, and Marion, in .case no. 1140606, appeals from the judgment in favor Dr. Simmons. For the reasons stated herein, we reverse the judgments in cases no. 1140604 and no. 1140605 and remand the cause for a new trial as to those defen *252 dants, and we affirm the judgment in case no. 1140606.

I. Fads and Procedural History

On February 27, 2009, Arthur underwent a kidney-stone-removal procedure at St. Vincent’s East hospital in Birmingham. Dr. Taylor Bragg performed the procedure, and Dr. Simmons was the anesthesiologist. During the procedure, Arthur suffered a heart attack. Arthur was revived, but the heart attack caused him to suffer hypoxic encephalopathy (deprivation of oxygen. to the brain), which left him in a nonresponsive state. On March 19, 2009, Arthur was transferred from St. Vinceiit’s to Noland Hospital Birmingham and'was admitted by Dr. Ross. Arthur remained at Noland Hospital until April 27, 2009, when he was- transferred back to St. Vincent’s to receive dialysis for renal failure. Arthur passed away on April 28, 2009.
Marion filed this wrongful-death action on February 28, 2011, against, among other defendants,[1] Dr. Ross, Dr. Simmons, and Noland. Although Marion asserted various theories of liability, the essence of her claim against Dr. Simmons was that he breached the applicable standard of care by failing to position Arthur properly during his kidney-stone-removal procedure and that this breach caused Arthur’s blood to be unable to circulate properly, which in turn caused Arthur’s heart attack and hy-poxic encephalopathy. As to her claim against Dr. Ross, Marion claimed that Dr. Ross breached the applicable standard of care by prescribing Rocephin, an antibiotic, to treat an infection Arthur was developing. Arthur had a documented allergy to Ancef, which, like Rocephin, is in a class of antibiotics called cephalosporins. Marion alleged that Dr.- Ross failed to note Arthur’s allergy to Aiicef and that, if Dr. Ross had noted the allergy, he would not have prescribed a cephalosporin to treat Arthur’s infection. Marion also alleged that Noland breached the applicable standard of care by failing to' train its nurses to check for contraindications to medications. Marion alleged that the administration of Rocephin caused Arthur to develop a severe allergic reaction known as toxic epidermal necrolysis (“TEN”). Marion alleged that TEN caused Arthur to develop sepsis, which, in turn, caused his death.
The trial lasted from September 8, 2014, through October 3, 2014. Dr. Ross, Dr. Simmons, and Noland moved for a judgment as a matter of law at the close of Marion’s evidence and again at the close of all evidence. Both motions challenged the sufficiency of the evidence, and both motions were denied. After closing arguments, the trial court instructed the jury and sent it to deliberate.
On October 3, 2014, which' was the third day of the jury’s deliberation, Dr. Ross, Dr. Simmons, and Noland moved for a mistrial. Counsel for Dr. Ross and Noland argued:
“MR. [MICHAEL] BELL[, counsel for Dr. Ross and Noland]: Judge, I need to make a motion. But I want to start by making this very clear; clear as I know how, we are not suggesting that the Court or anyone associated with the Court has done anything intentionally wrong. Not at all. We — what this relates to is the jury asking questions in the morning yesterday and then in the afternoon. And there are multiple cases *253 that say that a Court cannot-instruct a jury outside the presence of counsel without notifying us, all counsel, and giving us an opportunity to participate in whatever questions and answers may happen. No one is suggesting that anything that the Court did or Court personnel did was intentionally improper and violative of that rule. But we do know and we learned yesterday that the jury asked questions about whether the verdict had. to be. unanimous, burden of proof, and then, ultimately, the third question where we were involved, in .terms of what the evidence was on whether the Rocephin caused the death. And under various cases, we’ve got the — George [Knox, counsel for Dr. Simmons,] gave Jori [Jordan, the trial court’s law clerk,] one of the cases, the Savage [Indus., Inc. v. Duke ] case[, 598 So.2d 856 (Ala.1992),] this morning. And then there’s the [Petty-]Fitzmaurice [v. Steen ] case, 871 So.2d 771 [ (Ala.2003) ]. The only way for us to preserve and raise that issue at this stage is by motion for a mistrial. So we — that’s the only way we can deal with it at this stage, and we’re obligated to raise it timely in relation to while the jury is still deliberating and once we are on notice of those questions and answers taking place without us being notified and us being present and participate in. So at this time, we do need to move for mistrial.”
The trial court denied the motion, explaining:
“They have asked questions, that’s why I called you all in yesterday and read— .let you know what they had asked. .They always ask questions. And, you know, we always call counsel in and let them know what they ask. If — you know, sometimes lawyers will suggest how we respond back to them, you know like George did yesterday. And I don’t think that rises to a level for a mistrial.”
Toward the end of the discussion, the trial court said: “So I’m sure they will have plenty of qüestions. We-generally ask them to write their questions down, and then we’ll call you in and let you know what they ask. And that’s it.”
The jury returned a verdict in favor of Dr. Simmons but against Dr. Ross in the amount' of $100,000 and against Noland in the amount of $1,300,000. Noland and Dr. Ross each filed a postjudgment motion for a judgment as a matter of law, or, in the alternative, for a new trial, or to alter or amend the judgment. In those motions, Noland and Dr. Ross argued ¡again that they were entitled to a new trial because of the trial court’s communications with the jury. Noland and Dr. Ross also attached affidavits of several jurors, saying,- among other things, that Jori Jordan, the trial court’s law clerk, entered the jury room and had discussions with the jurors. Marion opposed the motions, submitting affidavits fi’om the trial court’s clerk and several other jurors, denying that the discussions had taken place.
On January .26, 2015, the trial court denied Noland’s and Dr. Ross’s motions, stating, in pertinent part:
“The Defendants’ claim that the Court’s, clerk was overheard to say in the jury room that their verdict must be unanimous and that-there could be no hung jury. Submitted affidavits show statements to be in conflict.
“The Court in its instruction to the jury informed them that their verdict must be unanimous. That there could not be what we call a ‘jury quotient.’
“Each juror when asked individually before the Court, if this was their true and lawful verdict, answered in the affirmative.”
*254 • Dr. Ross and Noland filed their notices of appeal to this Court on March 6, 2015 (cases no. 1140604 and no. 1140605, respectively); Marion filed her notice of appeal on March 9, 2015 (case no. 1140606). Marion explicitly stated in her notice of appeal that she was not challenging the jury’s verdict as to Dr. Simmons; she asks only that, if this Court reverses the judgments in her favor against Dr. Ross and Noland and remands the cause for a new trial, her claim against Dr. Simmons be reinstated as well.

II. Standard of Review

“‘It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.’ ”
Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989) (quoting Hill v. Sherwood, 488 So.2d 1357 (Ala.1986)).

III. Discussion

A. Dr. Ross’s and Noland’s Appeals (cases no. 1140604 and no. 1140605)

Although Dr. Ross and Noland raise multiple issues on appeal, one issue is dis-positive: Whether the trial court erred in denying the motions for a new trial based on the communications between the trial court and the jury that occurred outside the presence of the parties and counsel.
Dr. Ross and Noland argue that the trial court should have granted their motions for a new trial based on Matthews v. Liberty Mutual Insurance Co., 286 Ala. 598, 243 So.2d 703 (1971). In Matthews, after the jury was sent to deliberate, a juror knocked on the door of the jury room and told the bailiff that the jury had a question for the judge. The bailiff informed the judge, who then went into the jury room. The judge testified that he asked who was the foreman, and, after hearing the jury’s question, he said only this: “ ‘ “Ladies and gentlemen, when you consider this case, you are to consider all the evidence and you are to consider all the matters presented to you by the Court, and you are to consider them together.”’” 286 Ala. at 601-02, 243 So.2d at 706. A motion for a mistrial followed, which the trial court denied. The judge explained that his “ ‘purpose in going in to the jury room was to ascertain whether or not such matters were represented there that would call for the presence of counsel.’ ” 286 Ala. at 602, 243 So.2d at 706.
On appeal, this Court held:
“We understand the general rule to be that the judge may not, in the absence of counsel, further instruct the jury, after their retirement, without making a reasonable effort to notify counsel or without some special circumstances or excuse being shown which reasonably prevented notice. Kuhl v. Long, [102 Ala. 563, 15 So. 267 (1893) ]; Feibelman v. Manchester Fire Assurance Co., [108 Ala. 180, 19 So. 540 (1895) ].
“Our court concluded in Feibelman, supra:
“‘We can not inquire, in such a case, what instructions were given by the court to the jury — whether they were correct or incorrect, prejudicial or otherwise.... The only safe course therefore, when it is established that the court, without some overruling necessity therefor, gave instructions to the jury ... in the absence of the complaining suitor’s counsel, engaged in representing him on the trial, and without reasonable notice to them and opportunity to be present, is to withhold all inquiry and investigation into *255 the correctness of the instructions or action-of the court, and treat them as conclusively prejudicial, by reason of the suitor’s deprivation of his constitutional right....’”
Matthews, 286 Ala. at 604, 243 So.2d at 708. The Court cited the following as the rationale for this rule:
“ ‘It has been wisely stated that ‘next to the tribunal being in fact impartial is the importance of its appearing so’. Shrager v. Basil Dighton Ltd., (1924) 1 K.B. 274, 284. This applies in a special way to the Judge and his relationship with the jury.' Without doubting the worthy motives or the well-intentioned solicitude of the Judge for the wishes and welfare of the jurors, private communication by a Judge to or with the jury in the jury room and in the absence of counsel is almost certain to create suspicions and a-belief of unfairness in the minds of many people.’ ”
Matthews, 286 Ala. at 603, 243 So.2d at 707-08 (quoting Glendenning v. Sprowls, 405 Pa. 222, 224, 174 A.2d 865, 866 (1961)) (emphasis omitted).
“‘Whether or not injury or injustice has resulted to the litigants by reason of the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in' jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned. It is only through the granting of a new trial in situations like this, as well as vigilant effort by the officers of the court to prevent such occurrences, that public confidence in the jury system may be preserved.’ ”
Matthews, 286 Ala. at 603, 243 So.2d at 708 (quoting Daniels v. Bloomquist, 258 Iowa 301, 306-07, 138 N.W.2d 868, 872 (1965)).
Applying those principles to the case before it, the Matthews Court found that the trial judge did not have an “overruling necessity”-for 'communicating with the jury outside the presence of the parties and the parties’ counsel' and without giving the parties and counsel reasonable notice and an opportunity to be present. Although the Court believed the trial" judge was “motivated by a sincere desire to expedite the trial” and “intended no harm” in his actions, the Court held that the conduct in question was “of such prejudicial nature in this instance to' warrant reversal.” 286 Ala. at 605-06, 243 So.2d at 710.
In the present case, when Dr. Ross, Dr. Simmons, and Noland moved for a mistrial, they alleged that, in the absence of the parties’ counsel, the trial court answered questions about whether the verdict had to be unanimous and about the burden of proof. The trial court answered:
“They have asked questions, that’s why I called you all in yesterday and read-let- you know what they had- asked. They always ask questions. And, you know, we always call counsel in and let them know what they ask. If — you know, sometimes lawyers will suggest how we respond back to them, you know like George did yesterday. And I -don’t think that rises to a level for a mistrial.”
This statement suggests- that the jury had asked questions about the burden of proof and about whether'the verdict had to be unanimous, that the trial court had answered those questions, and that the trial court informed the parties and counsel after the fact.
Furthermore, in the motions for a new trial, the attorneys for Dr. Ross and No- *256 land submitted affidavits that further raised the question whether the trial court had improperly instructed the jury. Michael Bell’s affidavit provided, in relevant part:
“3. ... On the afternoon of October 2, 2014, Judge Helen Shores Lee summoned all counsel, to chambers-After I arrived, Judge Lee informed all counsel that: (1) the jury had asked questions about the burden of proof; and, (2) that the jury’s then pending-question was asking where it was supposed to look for evidence that Rocephin killed Mr. Marion.
“4. Counsel and Judge Lee discussed and agreed upon an appropriate response to the jury’s question about, locating evidence. The Court was to instruct the jury that it had received all of the evidence during the trial and that was all that it could consider. Ms. Jordan returned to the 'jury deliberation room to deliver this instruction. Ms. Jordan remained in the jury room for more than a few minutes.
“5. During the chambers conference on the afternoon of October 2, 2014, while I was present, the Court did not tell counsel how it had responded to the jury’s prior questions regarding the burden of proof and whether the verdict had to be unanimous. The Court did not inform counsel when the jury had raised those questions, and the Court did not. involve counsel in responding to those questions from the jury.”
The affidavit of John Thompson, another attorney representing Dr. Ross and No-land, said essentially the same thing, adding that Judge Lee had informed the parties that the jury had also -asked “whether the verdict had to be unanimous.”
In its order denying the motions for a new trial, the trial court admitted to instructing the jury that its verdict had to be unanimous, but it did not address the defendants’ concern that the trial court had instructed the jury, on the burden of proof. Instead, the trial court appeared to reason that there was no actual prejudice resulting from the giving of the additional instructions without counsel’s presence. However, “ ‘[wjhether or not injury or injustice has resulted to the litigants by reason of the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances.’" Matthews, 286 Ala. at 603, 243 So.2d at 708 (quoting Daniels, 268 Iowa at 306-07, 138 N.W.2d at 872). There is no evidence indicating that the trial court, attempted to contact counsel or that it had an “overruling necessity” for failing to do so. Matthews 286 Ala. at 604, 243 So.2d at 708.
The only attempt Marion makes to rebut Dr. Ross’s and Noland’s arguments is to say that the “affidavits submitted by the parties to the trial court speak for themselves.” Marion argues that no misconduct occurred and that this Court should defer to the discretion of the trial court. However, the affidavits in question address whether the trial court’s law clerk improperly instructed a single juror as to whether the jury verdict had to be unanimous. Marion makes no attempt to address the trial court’s concession that the jury was instructed that the verdict had to be unanimous. Marion also makes no attempt to address Dr. Ross’s and Noland’s allegations — and the trial court’s apparent concession — that the trial court instructed the jury as to the burden of proof outside the presence of the parties and counsel.
Under these circumstances, we have no choice but to reverse the judgments against Dr. Ross and Noland and to remand the. cause for a new trial. Like the Court in Matthews, we “are quite certain *257 that the capable and conscientious .trial judge (in whom, .we repose the highest confidence) intended no harm” and “was motivated by a sincere desire to expedite the trial,” but we also believe that “we should treat such communications as ‘conclusively prejudicial’ being a deprivation of the constitutional right to a fair trial to which every party litigant is entitled.” Matthews, 286 Ala. at 606, 243 So.2d at 710.

B. Marion’s Appeal (case no. 1140606)

On appeal Marion requests that we reinstate her claim against Dr. Simmons if we reverse the judgments against Dr. Ross and Noland and remand the cause for a new trial. Marion’s appeal “is in the nature of a conditional cross-appeal, which becomes ripe for review in the event that the judgment under review is reversed as a result of the appeal.” Huntsville City Bd. of Educ. v. Sharp, 137 So.3d 917, 923 (Ala.Civ.App.2013). Because we are reversing the judgments as to Dr. Ross and Noland, we may consider Marion’s claim against Dr. Simmons.
Marion argues that, in the interests of justice, this Court has the authority to grant a new trial as to Dr. Simmons as well. Marion argues that the improper communications between the trial court should equally taint the verdict as to Dr. Simmons just as much as it taints the verdict as to Dr. Ross and Noland. However, Dr. Simmons argues, among other things, that this claim was not properly preserved because it was not first made to the trial court.
“Generally this Court will not address the merits of an argument that is raised for the first time on appeal.” Crusoe v. Davis, 176 So.3d 1200, 1202 (Ala.2015). There is no reason Marion could not have asked the trial court in her opposition to the defendants’ postjudgment motions to grant -a new trial as to Dr. Simmons if the trial court found that a new trial was warranted as to Dr. Ross and Noland.[2] Thus, we decline Marion’s request to reverse the trial court’s judgment as to her claim against Dr. Simmons.

TV. Conclusion

In cases nos. 1140604 and 1140605, the judgments for Dr. Ross and Noland are reversed and the cause is remanded for a new trial as to those two defendants. In .case no. 1140606, the judgment is affirmed.
1140604 — REVERSED AND REMANDED.
STUART, BOLIN, PARKER, MURDOCK, MAIN, and WISE, JJ., concur.
SHAW and BRYAN; JJ., concur in the result.
1140605 — REVERSED AND REMANDED. '
STUART, BOLIN, PARKER, MURDOCK, MAIN, and WISE, JJ., concur.
SHAW and BRYAN, JJ., concur in the result.
1140606 — AFFIRMED.
STUART, BOLIN, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
SHAW, J., concurs in the result.

. The other defendants included St. Vincent’s East, Eastern Urology Associates, P.A., Donald Taylor Bragg, M.D., Mell L, Duggan, Jr., M.D., Kelly Carmack, CRNA, Mary Green-way, SRNA, Frank Heckathom, "RPh, DPh,” Tom Novitski, "RPh,” and various fictitiously named defendants. Before trial, Marion dismissed most of these defendants and settled her claims against the others.

. Marion did not flip a reply brief in case no. 1140606.