EDWARD R. KALTENHEUSER, appellee, v. RICHARD SESKER et al., appellants.

No. 50933.

(Reported in 121 N.W.2d 672)

MAY 7, 1963.

F. S. Fillmore and James A. Lorentzen, both of Des Moines, for appellants.

Clark & Clark, of Ames, Doran, Doran, Doran, Erbe & Doran and L. W. Courter, all of Boone, for appellee.

THOMPSON, J.—Plaintiff's petition alleged that on May 13, 1960, he suffered personal injuries and property damage when his automobile collided with a farm tractor owned by defendant Tolfred Sesker and operated by the other defendant, Richard Sesker; the tractor being stopped at the time partly upon the traveled portion of a public highway. No issue is made in this court upon the questions of negligence and liability. The defendants filed answer and counterclaims. Upon trial to a jury a verdict for the plaintiff was returned, and from the following judgment we have this appeal.

I. The defendants assign three errors, the first two of which are based upon questions involving the measure of damages. We shall consider them in order. The first assignment is quoted: "The trial court erred in overruling defendants' objection to plaintiff's amendment made at the close of plaintiff's evidence amending plaintiff's petition to allege crop loss in the amount of $5985 and raising the prayer by that amount, in overruling defendants' motion for continuance based on said amendment and in overruling defendants' motion for production of plaintiff's income tax returns prior to trial."

It will be noted that this assignment divides into two separate propositions. The first concerns the alleged error in permitting the plaintiff to amend to conform to proof at the close of his evidence. We consider it under 1(a) following.

1(a). Plaintiff's petition as it stood before the amendment to conform to proof was permitted asked recovery for damage to his automobile; for personal injuries to his body and face and involving the need for further dental care and necessitating expense for hospitalization and medical and dental care; and for loss of time from his work as a farmer of the value of $15 per day for 51 days totalling $765. The latter item as pleaded asserts that he was "permanently disabled and unable to do any work for a period of three weeks during the critical corn planting period". The total amount of recovery asked for in the original petition was $8165.

At the close of plaintiff's evidence he asked and was granted leave to amend to conform to proof. We set out the amendment herewith:

"Comes now the plaintiff and with leave of Court amends his Petition to conform to the proofs in the following particulars: 1. By adding to Paragraph 7 thereof the following. 'That as a further result thereof plaintiff was unable to procure help in planting his crop during such critical planting period by reason of which his corn crop was about three weeks later, a portion of the same failed to properly mature resulting in an overall crop loss to plaintiff of approximately twenty-one (21) bushels per acre on 285 acres of corn at the reasonable value of One Dollar ($1.00) per bushel or a total crop loss of Five Thousand Nine Hundred Eighty-five Dollars ($5,985.00).' By striking from the prayer thereof the figures $8,165.00 and substituting therefor the figures $13,025.90."

It will be noted the amendment increased the amount asked by $5985. The jury's verdict was for $8500.

The defendants objected to the amendment, and when their objections were denied asked a continuance to enable them to meet what they considered to be a new issue thus brought into the case. This was likewise denied; but the court offered to permit them to recall the plaintiff and his wife, the witnesses whose testimony supported the matter alleged in the amendment, for further cross-examination upon the point so raised. The defendants did not elect to accept this offer. They now contend the court erred in permitting the amendment and in denying them a continuance.

■■ The trial court has a considerable but not unlimited discretion in permitting amendments to conform to proof during trial or at the close of the evidence. This the defendants do not deny; but they think an entirely new issue was introduced by the amendment here and the court's discretion was abused. Both plaintiff and defendants cite many authorities which they contend support their respective positions at this point. We shall not take the time and space required to analyze all of the cases brought to our attention. Mooney v. Nagel, 251 Iowa 1052, 1058, 1059, 103 N.W.2d 76, 80, is a recent case directly in point. There we held it error for the trial court to deny the plaintiff the right to amend by adding two specifications of negligence. We said: "Both plaintiff and defendant had offered evidence on

the issue. We are not unmindful of the discretion necessarily lodged in the trial court, but where the parties have voluntarily offered evidence on an issue the denial of an amendment to conform to such proof appears to be beyond fair discretion. The allowance of an amendment is the general rule and to deny it the exception." We stated and followed the rule in Ver Steegh v. Flaugh, 251 Iowa 1011, 1021, 103 N.W.2d 718, 724, 725, where we further said: "The matters alleged in the amendment were litigated without objection." Several authorities are cited.

The trial court in ruling upon the offered amendment here pointed out that the evidence supporting it had been introduced without objection. It gave the defendants the right to recall the witnesses who had testified on the point for further cross-examination; a right they did not choose to exercise. We think this gave them all that they could reasonably ask. Nor are we persuaded the court should have granted a continuance. This, also, was within its discretion. Heiman v. Felder, 178 Iowa 740, 743, 160 N.W. 234, 235.

2(a). Here we consider the second branch of the first assignment of error which is based upon the refusal of the trial court, through a different Judge, to sustain defendants' application made some time before the opening of the trial, to require the plaintiff to produce his federal income tax returns for the years 1956 to 1960 inclusive. The application was resisted, and the then presiding Judge denied it, but closing with this sentence: "If the trial discloses the materiality of these returns the court will then be in a position to determine the question of production thereof with the proper understanding."

The application alleged only that the documents asked for were material to a just determination of the cause, for that the plaintiff alleged that he had suffered a loss of income and the documents would bear upon that issue. The court who made the ruling was of the apparent opinion that there was an insufficient showing as to how the income tax returns would be material upon the issue of loss of time by the plaintiff or how they would be relevant to any issue in the case. An application such as this is provided for by R. C. P. 129, and is in the category of motions under R. C. P. 80. It was not supported by affidavit, as rule 80

requires; nor was any evidence offered as rule 116 seems to permit. We held in Chandler v. Taylor, 234 Iowa 287, 294 to 296 inclusive, 12 N.W.2d 590, 594 to 596, that while the lack of an affidavit in itself was not sufficient to deprive the court of jurisdiction, there should be some showing, if not by affidavit then by evidence under rule 116 that the documents required were material and relevant to the issues. The case contains a thorough discussion of the question. Whether such a showing should have been made here, however, we do not find it necessary to decide.

Rule 130 is quoted (Production of books or documents): "Order. The court may order the production or inspection of such books and documents as, in its discretion, it deems material to a just determination of the cause, and on any terms or conditions it deems suitable to protect the documents, their owner, or any other person." This gives the trial court some discretion as to the production of such documents as it deems material. It is important here to point out that the court's order was not final. It plainly left the way open for the defendants to renew their application at the time of the trial. This they did not choose to do. They say in argument that they should have had the tax returns before the trial so that they could have prepared their case. We are not impressed with this contention. If they had renewed their request at the time of trial, and the court had granted it, it is difficult to believe they could not have shortly inspected these returns, or such of them as the plaintiff was ordered to produce, and gleaned from them whatever information would have been helpful. The tax return of the ordinary Iowa farmer is not such an involved document that weeks of study are required to analyze and understand it. An evening's inspection, probably a study at a noon recess, would surely have been sufficient. The court had discretion to postpone a final ruling on the application under the circumstances here; and the failure of the defendants to renew it, as the order permitted, brings the strong inference that they were more interested in the issue than in the documents. We find no reversible error here.

II. We set out the defendants' second assigned error: "The trial court erred in overruling defendants' motion to withdraw

from the consideration of the jury plaintiff's claim of permanent disability and plaintiff's claim of damages by reason of having acquired an ulcer."

It will be observed that again the assignment divides into two parts: the submission to the jury of the claim of permanent disability, and the claim for damages because of the ulcer claimed to have been caused by the collision. However, the two contentions are related, in that the question of whether there was sufficient evidence to warrant submission of permanent injuries depends somewhat upon, or is at least affected by, the sufficiency of the evidence that an ulcer was caused by the accident.

The plaintiff's evidence is that in the collision he sustained facial lacerations, a broken jaw, three broken teeth, and injuries to his abdomen; that he still has a numbness in his face and suffers from stomach distress; and that he was compelled to quit his farming operations because he could not ride a tractor. Mrs. Kaltenheuser testified to his condition. She said that he has an area in the right side of his face that is numb and paralyzed and "it will never get any better". She also told of his stomach pains, which she said were still bothering him at the time of the trial. He had had no such pains before the accident. Dr. Merton A. Johnson, a general medical practitioner, who was called to attend the plaintiff immediately following the accident and had seen him from time to time thereafter, testified as to his injuries, and that when he continued to complain of stomach pains an X-ray examination was made, and it disclosed an ulcer. The doctor was asked: "Doctor, would you say from your examination and treatment of Mr. Kaltenheuser, that it is reasonably probable that this ulcer developed as a result of his worry and anxiety, and directly attributable to this accident? A. I would say, yes. The ulcer was very small and didn't seem to be—there was no accompanying deformity of the duodenum, so it was apparently not a far-advanced ulcer." The doctor also testified that one who has had an ulcer gets another ulcer if he is not careful. At the time of the trial the patient was on a diet. The diet would not necessarily be continued indefinitely in the future, but he should try to avoid situations that might "upset"

him as far as possible. On cross-examination, in response to a leading question—"* * * there was a possibility that the accident could have caused it and there was a possibility the accident couldn't have caused it; is that correct?" The answer was "That is correct. Q. Then this is actually within the realm of possibility, isn't it, considering especially his previous treatment? A. It would be impossible to prove."

The defendants think this cross-examination destroyed the doctor's direct testimony that the ulcer was probably caused by the accident. We do not so understand it. The question asked on cross-examination dealt in possibilities, and it is understandable that the doctor could not say positively, beyond any question of proof, that the condition resulted from the accident. We doubt that medical science has yet advanced to that extent in the matter of definite causation of ulcers. We think the doctor's direct testimony, weakened perhaps by the cross-examination, was still for the jury to weigh.

The defendants further urge that since there was no medical evidence as to the permanency of injuries, the court erred in submitting the question to the jury. This is answered by our holding above that there was medical testimony that the ulcer was probably caused by the accident, that there is danger of a future recurrence, and that the plaintiff must be careful to avoid situations that might cause nervousness or stress. But we think there was also other evidence from which a deduction of permanent injury might be made, even though there was no medical evidence to support it.

The rule is thus stated in 25 C. J. S., Damages, section 162, page 829: "* * * direct expert evidence is not, according to the general rule, always essential to establish the permanency or future effects of an injury. So, future pain and suffering, or the permanency of injuries, may in some cases be inferred from the nature of the injury alone."

It is true, as the defendants urge, that when the symptoms from which permanent injury might be inferred are subjective only, medical testimony is required. They cite and rely much upon Shuck v. Keefe, 205 Iowa 365, 218 N.W. 31, and Shultz v. Griffith, 103 Iowa 150, 72 N.W. 445, 40 L. R. A. 117.

In the Shuck case, the claimed injuries were to the pelvic region. The X rays showed no permanent injury, and plaintiff's physician said that any permanent injury would be "in the realm of guesswork." There was nothing but plaintiff's own testimony that she continued to suffer pain. Shultz v. Griffith turns on the question that no future pain and suffering or permanent injuries were pleaded.

Two cases from foreign jurisdictions are in point upon the question here involved. In McClure v. Miller, 229 Ind. 422, 428, 98 N.E.2d 498, 500, 501, the Supreme Court of Indiana said: "There is evidence that the plaintiff was knocked unconscious, that he suffered contusions and lacerations of the right side of his head, face, shoulder and right leg. Stitches had to be taken in his chin and leg. There is evidence that plaintiff's hearing is affected, he has headaches, ears ring all the time and his right shoulder hurts when he raises the right arm. His injured leg was exhibited to the jury, and of course his scarred face must have been apparent. All these facts presented a situation of such objectivity as to enable the jury to determine the preponderance of the evidence with respect to the permanence of the injuries received without evidence from experts concerning the matter." (Authorities are cited.)

Pertinent language and rulings are also found in Carpenter v. Nelson, 257 Minn. 424, 430, 101 N.W.2d 918, 922. There the Minnesota Supreme Court disapproved an instruction which told the jury that future damages must be shown to "a reasonable medical certainty", instead of to "a reasonable certainty". It said: "While expert medical evidence is often essential, it is well established that the existence of future damages or permanent injuries may sometimes be inferred from other evidence, as where, for example, it is shown that the plaintiff is not fully recovered at the time of trial." There is such evidence in the case at bar.

Also significant is language in Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 380, 101 N.W.2d 167, 170, where we said, in referring to medical testimony which showed only a possibility of injury and that such evidence, standing alone, was not sufficient to engender a jury question: "However, we have

held such expert evidence as that given here is sufficient to warrant submitting to the jury the issue of proximate cause when coupled with other testimony, nonexpert in nature, that plaintiff was not afflicted with any such condition prior to the accident in question." We cited Chenoweth v. Flynn, 251 Iowa 11, 17, 99 N.W.2d 310, 313, and Rose v. John Deere Ottumwa Works, 247 Iowa 900, 910, 76 N.W.2d 756, 761.

There is also evidence that the plaintiff had been compelled to abandon his farming operations after the year in which he was injured and move into town where he could obtain lighter work. This situation was stressed somewhat in Young v. Mandis, 191 Iowa 1328, 1331, 1332, 184 N.W. 302, 303.

The evidence as to permanent injuries is not strong. But in consideration of the development of an ulcer, likely to recur; the evidence as to the fractured jaw which still caused a partial paralysis of the facial muscles and the necessity for further treatment; the necessity for care in diet to prevent recurrence of stomach pains; and the evidence that the plaintiff had been compelled to quit his farming operation, a jury submission was required. Here we must be cognizant of the rule that in determining whether an issue was properly submitted we take the competent evidence in the aspect most favorable to the plaintiff which it will reasonably bear. We find no error.

III. The third and final assignment of error is based upon the court's withdrawal of Division II of defendants' counterclaim, which pleaded the doctrine of res ipsa loquitur. The claimed error is not available to the defendants. The verdict for plaintiff necessarily established the negligence of the defendants; and this finding is fatal to recovery on their counterclaim. We have repeatedly so held. The question is thoroughly discussed and many precedents are cited in Olson v. Truax, 250 Iowa 1040, 1043 to 1047 inclusive, 97 N.W.2d 900, 902 to 904 inclusive. See also Farm Service Co. v. Tobin, 254 Iowa 1328, 1333, 121 N.W.2d 128, 130.

We find no merit in the errors assigned.—Affirmed.

All JUSTICES concur.