WANDA BAXLEY DANIELS, appellee, v. LLOYD FRANKLIN BLOOM-QUIST, appellant.

No. 51939.

(Reported in 138 N.W.2d 868)

DECEMBER 14, 1965.

Doran, Doran, Doran & Courter, of Boone, for appellant.

Mahoney, Jordan, Statton & Smith, of Boone, and Schatz & Busch, of Chicago, Illinois, for appellee.

MASON, J.—Plaintiff seeks recovery for property damage and personal injuries alleged to have been sustained as a result of an automobile accident occurring at approximately 12:45 p.m., February 22, 1954, on U. S. Highway 30, one mile east of Ogden, Boone County. Plaintiff's vehicle in which she was riding as a passenger was being driven with her consent by Sheldon David Doman in an easterly direction. Defendant was driving his pickup truck in the same direction preceding plaintiff's vehicle. As plaintiff's driver attempted to pass defendant's pickup truck on the left and when the vehicles were about even, the collision took place, forcing plaintiff's vehicle into a field on the north side whereby plaintiff asserts she suffered the claimed injuries.

Plaintiff alleged five grounds of negligence against defendant: (1) Lack of control. (2) Failure to maintain proper lookout. (3) Failing to give way to the right in favor of plaintiff's vehicle, contrary to section 321.299, Code, 1954. (4) Turning out to the left without giving an appropriate signal to plaintiff's driver of defendant's intention to turn, contrary to section 321.314, and (5) Turning the pickup truck from a direct course upon the highway without first ascertaining such movement could be made with safety, contrary to section 321.314, Code, 1954.

Defendant's amended answer denies generally plaintiff's allegations and states affirmatively that plaintiff's claimed injuries were sustained prior to the collision; plaintiff and her driver were engaged in a joint enterprise; an employer-employee relation existed between the two; a principal-agent relation existed between the two; said vehicle was operated under plaintiff's direction; and plaintiff and her driver were negligent in nine respects. Plaintiff's reply to defendant's answer and amendments denies generally defendant's allegations.

The trial court submitted three specifications of negligence against defendant: Turning the pickup from a straight course on the highway before first ascertaining such movement could be made with safety; failure to keep a proper lookout; and failing to give way to the right in favor of plaintiff's automobile which was passing defendant's pickup truck. The court also submitted to the jury defendant's claim that plaintiff and operator of her vehicle were engaged in a joint venture. Defendant's specifications of negligence, as submitted, were thus summarized: That plaintiff and the operator of her automobile were negligent in failing to keep a proper lookout and to have her car under control. The court also submitted defendant's claim that plaintiff's driver was operating her car under her personal direction and control.

Defendant's exceptions to the instructions were overruled. No requested instructions were submitted to the court.

The item of property damage was withdrawn from the jury which returned a verdict for plaintiff of $7500.

Defendant's motion for new trial and for judgment notwithstanding the verdict was overruled. Defendant appeals and plaintiff cross-appeals from judgment on the verdict entered January 9, 1965.

Defendant assigns nine errors. The fourth assigned error complains of nine rulings on evidence.

I. Defendant's first assignment is there was misconduct of the jurors and the court. These facts established by affidavit of three jurors bear on this assignment. The matter was submitted to the jury about Friday noon. Shortly after 1 a.m., Saturday, the bailiff called the foreman, Howard Riggs, from the jury room

and told him the judge wanted to talk to him. The foreman left the jury room and was gone five to seven minutes; upon his return he told the other jurors they would have to reach a verdict. In about 15 minutes the jury was called into the courtroom where the court gave an additional instruction referred to as number 11. Neither of the parties nor the attorneys were present when the jury was returned to the courtroom. The verdict was returned about 3:45 a.m. on Saturday.

Defendant's motion for new trial and for judgment notwithstanding the verdict and exceptions to instructions were presented in 20 separately numbered paragraphs and 15 subparagraphs. Plaintiff filed a resistance to defendant's motion in which she simply denied that the defendant was deprived of a fair and impartial trial for the reason set out in paragraph 20 of defendant's motion.

In ruling on defendant's motion, particularly paragraph 20 which refers to the foreman being called from the jury room, the court disposed of the matter by saying there was insufficient showing and the court was not convinced a new trial should be granted. The motion was overruled as to each paragraph.

Consideration of this assignment will be limited solely to trial court's action in sending the bailiff to the jury room, removing the foreman five to seven minutes and the foreman's assertion upon return to the jury room that they would have to reach a verdict. Other matters urged by both parties are not necessary to our determination.

It has been said the deliberation of the jury is a final and crucial stage of any trial. In order that the institution of jury trials be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted, not only from all improper influences, but from the appearance thereof. It is often said that the jury trial is one of the bulwarks of our liberty, but it will remain so only as long as public confidence in the institution prevails. Lavalley v. State, 188 Wis. 68, 80, 205 N.W. 412.

Whether injury or injustice has resulted to the litigants by reason of the conduct is not our primary concern. Rather, our concern is with the implication that attaches to the adminis-

tration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned. It is only through the granting of a new trial in situations like this, as well as vigilant efforts by the officers of the court to prevent such occurrences, that public confidence in the jury system may be preserved. Rasmussen v. Miller, 268 Wis. 436, 68 N.W.2d 16, 18.

A judge of the court occupies a different attitude toward the jury from that of any other person. In the heat and passion often engendered on the trial, in the conflicting arguments and statements of law by opposing counsel, the jury naturally look to the court to bring certainty out of the confusion. It is for these reasons that a communication by the judge to the jury stands on a different basis from that of any other person, and for a like reason the law should throw a higher degree of circumspection around such communications. Annotation, 41 A. L. R.2d 288, 305.

The foregoing requires a reversal of the case.

II. In his second assignment defendant argues that the court erred in admitting mortality tables in evidence over his objection and in giving instruction 11 relating thereto. In this assignment defendant further contends the court erred in giving instruction 10 as to permanency of injury, future pain and suffering and disability allegedly sustained by plaintiff. Defendant took exceptions to instructions 10 and 11.

Our decision under Division I to reverse and remand this cause for a new trial requires that this matter should receive our attention.

Plaintiff called two doctors. Dr. Enferd E. Linder of Ogden testified he saw a Wanda Baxley who had been in a minor automobile accident suffering from discomfort in the region of the lower anatomy, found a dislocated coccyx which he relocated, X-rayed her pelvis because she complained of discomfort in this region and found the pelvis to be normal after relocation of the coccyx. He recalled nothing further about her condition. A

308

hypothetical question propounded to the doctor called for an opinion as to whether pain and suffering and swelling in the area of the coccyx that existed in December of 1954 could have been caused by the accident for which the doctor examined plaintiff in February of 1954. Testifying he had an opinion, the doctor stated, "Well, my opinion would be very unlikely she would have anything that long afterward." Asked, "Doctor, when you say it would be unlikely, would you say it would be impossible?", the doctor answered, "It isn't impossible. It is possible that she could have some discomfort that long afterward, but in my opinion it would be very unlikely that medically there would be reason enough here, with a dislocated coccyx to cause this much pain this long afterward; it is unlikely. There could possibly be some pain after the relocation of the coccyx, possibly for a month, and after that normally it would subside."

Dr. Albert J. Levine of Chicago testified by deposition that he first saw plaintiff who he knew as Wanda Baxley on February 23, 1954, obtained the history, did an examination, found no abnormality in her abdomen and advised her as to therapy. His objective findings were completely negative except for a murmur which plaintiff stated she had had as the result of rheumatic fever at the age of 18 years and a tendency of the coccyx to displace or move. Subjectively she complained of suffering all over, nauseated and vomiting, complained of pain and tenderness when she was examined in the lower back region, particularly in the coccyx area. He saw plaintiff again December 2, X rays were taken and they were nonrevealing except for the possibility of an old fracture of the coccyx and on December 6 he gave plaintiff treatment consisting of shortwave diathermy, infrared lamp and massage.

There is no question that evidence of plaintiff's life expectancy is admissible where the evidence shows the injury is permanent or that pain and suffering will continue for an indefinite period of time. Ruud v. Grimm, 252 Iowa 1266, 1276, 110 N.W.2d 321. There can be no quarrel with the rule that recoverable damages for permanent injury or future pain and suffering must be such only as are reasonably certain. Shuck v. Keefe, 205 Iowa 365, 370, 371, 218 N.W. 31.

In the Shuck case "The trial court did instruct the jury that, in estimating the damages, if any, recoverable by plaintiff, 'the injury to plaintiff's person, whether the same is permanent or not,' could be taken into consideration, and also 'the pain and suffering and mental anguish that the evidence renders reasonably certain that she will endure in the future.' The only testimony offered by the plaintiff on this proposition was her purely subjective symptoms. There was no evidence by experts that corroborated her claims. There was no evidence as to whether the injuries are incurable, or, if curable, the probable time it would take to effect a cure. The very nature of this claim required that the plaintiff present proof of expert witnesses."

The mere statement by the plaintiff that she still suffers pain is not sufficient per se to warrant a finding that there will be any future pain or physical suffering because of her injuries. Shuck v. Keefe, supra.

Direct expert evidence is not, according to the general rule, always essential to establish the permanency or future effects of an injury. So, future pain and suffering, or the permanency of injuries, may in some cases be inferred from the nature of the injury alone. Kaltenheuser v. Sesker, 255 Iowa 110, 117, 121 N.W.2d 672, 677, citing 25 C. J. S., Damages, section 162.

When the symptoms from which personal injury may be inferred are subjective only, medical testimony is required. Kaltenheuser v. Sesker, supra, and citations.

Under this record the mortality tables should not have been received nor should the court have instructed on permanent disability or future pain and suffering.

III. Appellant argues the court erred in permitting Doctor Linder to answer the hypothetical question propounded to him. Before answer defendant objected "* * * because it is improper in form. It doesn't show a condition and everything that happened at subsequent times * * *. It is improper. No proper foundation has been laid."

Defendant's objection was general. It is not sufficiently specific. It is the duty of counsel to point out the particular defect or defects in such a question so the statements objected to may be corrected or eliminated. In re Estate of Telsrow, 237

Iowa 672, 681, 22 N.W.2d 792, 798, and citations. Crozier v. Lenox Mutual Insurance Association, 252 Iowa 1176, 1183, 110 N.W.2d 403, 407. We have also said that counsel who objects to a hypothetical question for this reason should advise the court in what respect it fails to state the record properly and may not rely upon a general objection. Kunzman v. Cherokee Silo Co., 253 Iowa 885, 893, 114 N.W.2d 534, 539, 95 A. L. R.2d 673. Reversible error may not be predicated upon an objection which does not tell the court the ground upon which it is based. Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 182, and citations.

Defendant's contention cannot be sustained in view of the record made.

IV. In another assignment defendant complains of the court's failure to withdraw from the jury's consideration the testimony of Doctor Linder because he was unable to identify or recognize plaintiff in the courtroom almost 11 years later. The doctor's records showed no indication of ever having treated a Wanda Daniels or Wanda Sportsman, but did indicate on February 22, 1954, he saw a Wanda Baxley who had been injured in an automobile accident on Highway 30 by the sale barn, suffering a dislocated coccyx, with X rays negative after reduction. Plaintiff testified that after the accident someone took her to a doctor's office in Ogden, Doctor Linder she believed. She further testified Wanda Baxley was her maiden name, she married Tommy Daniels February 14, 1954, her present name is Wanda Baxley Sportsman, at the time of the accident she gave her identification as Wanda Baxley and she heard Doctor Linder's testimony in court and she was that Wanda Baxley.

Defendant's argument cannot be accepted.

V. Another assignment is based on the court's failure to instruct on issues raised by defendant's specifications of negligence on part of plaintiff and her driver alleged to have contributed to the collision. The court gave two instructions concerning contributory negligence and in summarizing the pleadings referred to defendant's allegations of negligence. He did not instruct on each specification of contributory negligence.

The instructions were submitted to counsel for both parties to make their record and objections. Defendant stated,

"\* \* \* we think there should be an instruction or instructions setting out that these are matters alleged by the defendant in which plaintiff's driver was negligent in operating the automobile owned by plaintiff." He made no request to instruct more specifically on these matters.

In the absence of request for additional instructions or details on these issues, the error here assigned would not warrant a reversal. In re Estate of Andrews, 245 Iowa 819, 829, 64 N.W. 2d 261, 268.

VI. Another assignment is directed at the court's failure to withdraw from the jury's consideration testimony of Doctor Levine in regard to plaintiff's X rays and charges made for services rendered her and in giving an instruction regarding such testimony. During the trial, evidence showed the X rays were either lost or destroyed when the doctor moved his office. Defendant's motion to strike the doctor's testimony was based upon the reason that the X rays were not then available and that he had not had an opportunity to cross-examine in regard to them. The X rays were nonrevealing except for the possibility of an old fracture of the coccyx.

Neither the defendant's objection nor the assignment of error is well taken.

VII. Under one division appellant argues 12 assigned errors which refer to rulings on objections to evidence. Errors 1, 2, 7, 8, 9, 10, 11 and 12 relate to plaintiff's testimony concerning her physical condition and treatment by various doctors. A nonexpert or lay witness may testify as to his own health or physical condition. He may state simple inferences drawn by him from his own conscious subjective sensations as to his physical condition and may testify as to the condition of his health and freedom from sickness at a particular time. He may state his prior condition. 32 C. J. S., Evidence, section 546(22), page 149.

The matter of loss of wages or impairment of earning capacity was not submitted to the jury so errors 3 and 6 are without prejudice. Errors 4 and 5 relate to plaintiff's description of the speed and movement of the vehicle in which she was riding. Plaintiff was asked if she observed the speed of the car and she replied, "No, sir, I didn't, but it wasn't very fast." The weight is for the jury.

312

Much of what has been said in Division III with reference to proper objections applies to many objections made by defendant and need not be repeated here. Many of his objections were made after the witness's answer was in with no excuse given for failure to make timely objection nor motion to strike being made.

Many of defendant's objections were based upon the ground not "the best evidence."

 "Although the rule is now sometimes applied by the courts in other areas of evidence, it can hardly be maintained that there is a fixed rule requiring the best evidence except as applied to writings." 1 Jones on Evidence, Fifth Ed., section 231. Rule of best evidence obtainable is expressly, if not solely, applicable to documentary evidence. Conrad, Modern Trial Evidence, section 774. See also 4 Wigmore on Evidence, Third Ed., section 1174(2).

 Hearsay evidence has been defined as testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, Evidence, page 460.

Each and every assigned error has been studied. We have discussed what we believe to be the most important. The others do not require separate consideration.

VIII. Plaintiff in her cross-appeal asks for our expression on certain propositions raised, in the event of a reversal.

Her first and second divisions will be considered together. This action arose out of an accident occurring February 22, 1954. November 20, 1958, counsel for the parties entered into a stipulation to take four depositions in the state of Nevada, one on behalf of plaintiff and three on behalf of defendant. The record indicates that if plaintiff did not take Doctor French's deposition, defendant would not desire to take the deposition of their three witnesses mentioned in the stipulation. On December 7, 1964, the date this cause was finally set for trial, a motion for continuance was made by plaintiff because she could not be personally present. At that time it appeared that Doctor French's deposition had not been taken after more than six years or, if

taken, there was no record and no certified copy filed. The court in granting the motion for continuance provided that Doctor French's testimony would not be admissible either in person or by deposition. If Doctor French testified in person or by deposition, defendant would insist thereafter time in which to take their depositions.

We feel that the order entered December 7, 1964, was within the discretion of the trial court and such discretion was not abused.

At the trial commencing January 5, 1965, when Doctor Harold Laufmann's deposition was offered, it was discovered that his deposition was not on file. Counsel for both parties had unsigned copies of the deposition which were not certified. The trial court refused to permit the use of this copy. This was a matter within the trial court's discretion, and we cannot say under the circumstances it was abused.

In Division III plaintiff complains of the limiting of plaintiff's testimony by the court concerning her physical condition and treatment. Ordinarily plaintiff could testify as to her own physical condition and pain provided she was able to show a causal connection between her pain or disability and the injuries alleged to have been sustained February 22, 1954. From the record made we are not able to determine whether there was sufficient causal connection. Perhaps in the retrial this matter will be more fully developed. If the causal connection is not sufficiently shown, the evidence will not be admissible.

In Division IV plaintiff complains the court instructed as a matter of law she and her driver were engaged in a joint enterprise and as a matter of law any negligence of her driver that contributed to plaintiff's damage would be chargeable to plaintiff.

This complaint is well taken. "The fundamental doctrine controlling this question of joint adventure or common enterprise is not controlled by the fact that the parties are going to the same place on the same mission, but by whether or not the complaining party bore such relation to his associate as that he had the right of control in some manner over the means of locomotion." Teufel v. Kaufmann, 233 Iowa 443, 445, 6 N.W.2d 850,

314

852, quoting from Stingley v. Crawford, 219 Iowa 509, 512, 513, 258 N.W. 316, 318.

 The evidence was insufficient to instruct as a matter of law that plaintiff and Doman were engaged in a joint enterprise and that the negligence of the driver, if any, was chargeable to plaintiff.

Because of what has been said in Divisions I and II hereof, this cause is reversed and remanded for new trial.—Reversed and remanded.

All JUSTICES concur.