# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2977

_____

| | | |
|---|---|---|
| Two Rivers Bank & Trust, | * | |
| As Conservator for K.H. a Minor; | * | |
| Kala Holtkamp, Individually; | * | |
| Tia Hamm, Individually and as | * | |
| Executor of the Estate of | * | |
| Christopher D. Davis; | * | |
| Nicholas W. Finley, Individually, | * | Appeal from the United States |
| | * | District Court for the |
| Plaintiffs/Appellees, | * | Southern District of Iowa. |
| | * | |
| v. | * | |
| | * | |
| Vanya Ilieva Atanasova; | * | |
| Venture One, Inc., | * | |
| | * | |
| Defendants/Appellants. | * | |

_____

Submitted: May 15, 2012
Filed: July 24, 2012

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

This negligence action grew out of a highway collision in Iowa. Kala Holtkamp was driving at night with her fiancé, Christopher Davis, and her two year old son, K.H., when she collided with the rear of a semi truck driven by Vanya Ilieva Atanasova. Davis was killed, K.H. was seriously injured, and Holtkamp fractured a

vertebra in her neck. Holtkamp, K.H.'s father, and representatives for Davis and K.H. brought this action for negligence and loss of consortium against Atanasova and Venture One, Inc., the truck's dispatcher. A jury found both Atanasova and Holtkamp negligent, apportioning 90% of the fault to Atanasova and 10% to Holtkamp, and awarding more than $3.6 million in damages to the appellees. Atanasova and Venture One filed several post trial motions, which the district court[1] denied. Atanasova and Venture One appeal from the judgment and the denial of the post trial motions. We affirm.

## I.

Kala Holtkamp, Christopher Davis, and K.H., residents of Iowa, were traveling south on highway 218 at approximately 7:00 p.m. on February 20, 2008. It was dark, and the evening was clear. Holtkamp, who was 18 at the time, was driving in the right lane on an unlit portion of the highway when she crested a hill near exit 45 in Mount Pleasant, Iowa. Within about ten seconds she saw a semi truck also traveling southbound and driven by Vanya Ilieva Atanasova, a resident of Maryland. The truck was traveling between 30 and 40 miles per hour below the posted speed limit of 65 mph. When Holtkamp realized she was about to hit the truck, she slammed on her brakes and swerved into the left lane to try to avoid a collision. Unfortunately, the passenger side of her car hit the rear of the trailer and skidded underneath it before hitting the left guardrail and rolling over. Davis was killed, and K.H. suffered an open skull fracture, and will require ongoing medical care. Holtkamp fractured one of the vertebrae in her neck and lacerated her left hand. Atanasova was not injured; nor was her 19 year old son who was traveling with her.

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

In the joint complaint Holtkamp sued Atanasova and Venture One, the truck's Illinois based dispatcher, under the district court's diversity jurisdiction for common law negligence and loss of consortium with K.H. Two Rivers Bank and Trust, K.H.'s conservator, brought a claim for negligence. Tia Hamm, Davis's mother, sued for negligence on behalf of her son's estate and for loss of consortium in her individual capacity. Nicholas Finley, K.H.'s father, brought a claim for loss of consortium with K.H. The case proceeded to an eight day jury trial.

In a videotaped deposition played for the jury Signe Young, who had been parked facing north on the shoulder of highway 218 at the time of the crash, testified that her semi truck had broken down. While waiting for help she noticed another parked semi truck facing the opposite direction. It was parked for several minutes on the shoulder near the off ramp for exit 45 in what she described as a "weird place to stop." She observed the truck start to move back onto the highway and "shortly after that . . . [she] heard something not right," saw headlights bounce around, and realized there had been an accident.

Rachella Dravis was the first person to come upon the accident site. She testified at trial that she had been traveling south on highway 218 behind Holtkamp. When she crested the hill, she saw lights moving up and down in front of her. She slammed on her brakes and came to a stop "entirely too close" to Holtkamp's car. Dravis called 911 and reported the accident at 7:03 p.m. She testified that she observed Atanasova's truck on the shoulder without any lighting on the side or rear of the trailer. Dravis testified that she turned on all the lights in her car and activated her flashers, but several trucks were still unable to stop after coming over the hill and ended up driving through the scene.

An officer with the state department of transportation inspected Atanasova's truck after the accident. He testified that the lights at the top rear of the trailer were not operational and that Atanasova had told him on the night of the accident that she

-3-

was not sure whether they had been working at the time Holtkamp hit her truck. The officer stated that Atanasova had informed him that the accident occurred after she had slowed to between 45 and 50 miles per hour while looking for the Mount Pleasant exit. In her trial testimony Atanasova acknowledged that her cell phone records showed that her phone was in use from 7:01 p.m. until 7:06 p.m., spanning the time of the accident.

An accident reconstructionist testifying for the plaintiffs stated that there had been no indication that Atanasova was moving onto the exit ramp at the time of the crash. The accident appeared to have occurred directly parallel to the start of the exit ramp. Atanasova's truck was still completely within the right hand travel lane at the time it was hit. The reconstructionist testified that Atanasova was actually traveling between 24 and 35 mph when the accident occurred and that Holtkamp was traveling between 56 and 63 mph. The posted speed limit was 65 mph. Holtkamp would have had an unobstructed view of the truck for approximately 13 seconds after she crested the hill had the truck been visible. The reconstructionist attributed the accident to the significant speed differential between the two vehicles and Atanasova's failure to signal her slow speed to other vehicles.

The state trooper who responded to the accident also testified at trial, stating that he had not found evidence that Atanasova's truck had been parked on the shoulder. He offered his opinion that the accident occurred because Holtkamp had not realized how slowly the truck was moving and did not have enough time to react and that Atanasova could not have taken any action to avoid the impact. Appellants sought the court's permission to question the trooper about a citation he gave to Holtkamp for following too closely and the fact that he had not cited Atanasova. The district court denied this request and allowed the plaintiffs to redact the references to Holtkamp's citation in exhibits before the court.

At trial Holtkamp described her recollection of the accident and the injuries she and her son suffered. She explained that just before the crash she had been talking to Davis about the upcoming weekend and that K.H. was content in his car seat. She testified that she had not seen brake or tail lights on the truck nor any reflection off the trailer's steel doors or reflective strips. She stated that she had not seen the truck at all until she unsuccessfully tried to avoid hitting it.

Holtkamp sought damages associated with pain in her neck, shoulder, arm, and hand in the form of past medical expenses and lost wages, past and future physical and mental pain and suffering, and loss of full mind and body in the past and future. The district court admitted Holtkamp's medical records and bills over defense objections. The doctor who treated Holtkamp on the night of the accident testified that she had suffered from a spinal fracture and that she had described experiencing pain in her neck but not elsewhere. He prescribed pain medication and transferred her care to another facility and did not treat Holtkamp again. Holtkamp was instructed to wear a cervical collar 24 hours a day for six to eight weeks to treat her neck injury.

On cross examination Holtkamp admitted that she had taken the cervical collar off at times during the weeks she was supposed to wear it because it was causing pain. She explained that she was eventually refitted with a smaller collar. She was also questioned about injuries she had suffered from four incidents which occurred after the crash. Holtkamp admitted that she had strained her neck and lower back falling down some stairs, that she had been treated for neck pain after moving boxes, that she had been beaten by a boyfriend who hit her in the head, and that she had been treated for injuries to her eye, nose, and neck after being assaulted by a roommate. Holtkamp maintained that the pain she began experiencing after the accident had not changed as a result of these incidents. She also testified that the pain and numbness she began to experience after the accident in her shoulder and arm has made her work as a house cleaner more difficult and has limited her ability to play softball and

volleyball as she did in the past. Appellants sought a jury instruction on failure to mitigate damages which the district court declined to give.

Appellants also cross examined Holtkamp about the side effects of her prescription medications for panic attacks and bipolar disorder and objected to the exclusion of evidence from a mental health screening. There, Holtkamp had admitted using marijuana daily beginning at age 14 until two months after the accident. She stated she smoked marijuana as much as five times a day, then stopped for several months at a time including when she was pregnant, but eventually started again. The screening did not specify if she was smoking marijuana regularly at the time of the accident. Holtkamp denied that she had been using drugs when she was admitted to the hospital on the night of the crash and was not tested for marijuana or other drugs at that time.

Nicholas Finley testified in support of his claim for loss of consortium with then two year old K.H. Finley had never lived with K.H. and had been incarcerated for much of the time after the accident continuing through trial. He testified that before his incarceration he visited K.H. regularly, paid child support, and maintained a relationship with Holtkamp for the child's benefit. While in jail, Finley called K.H. regularly, recorded audio books to send to him, and wrote him letters. Finley visited K.H. in the hospital several times while he was in a coma and traveled to his rehabilitation center to visit him. Holtkamp testified that before the accident Finley and K.H. would play outside, go swimming, and ride four wheelers. There was also evidence that K.H. had to relearn to walk and speak and now has physical and cognitive limitations including limited use of his right hand. K.H. must wear a helmet and is expected to need additional surgery.

The jury found that the accident was caused by the negligence of both Atanasova and Holtkamp but attributed 90% of the fault to Atanasova. It awarded damages of $400,915 to Holtkamp, $3,190,852 to K.H.'s conservator, $71,371 to

Davis's estate, $400,000 to Davis's mother, and $25,000 to Finley. These amounts were reduced respectively by 10% to account for Holtkamp's comparative fault for a total of $3,679,325. Atanasova and Venture One moved for judgment as a matter of law at the close of the plaintiffs' case and again after all evidence had been submitted. They also filed post trial motions for a new trial and to alter or amend the judgment or for remittitur of damages. The district court denied the motions.

Atanasova and Venture One appeal from the judgment and from the denial of their post trial motions. They argue that the district court abused its discretion in instructing the jury on Atanasova's alleged negligence and excluding evidence of Holtkamp's drug use and traffic citation. Appellants challenge the denial of their post trial motions for a new trial on the ground that the jury's apportionment of fault was against the weight of the evidence and for judgment as a matter of law because there was insufficient evidence to support Finley's claim for loss of consortium. They also appeal the denial of their post trial motions for judgment as a matter of law and for a new trial or remittitur challenging the damage award to Holtkamp.

II.

A.

We first consider appellants' contention that the case must be remanded for a new trial because of error in the jury instructions. Under Iowa law, a jury in a negligence action must consider "factual specifications" provided by the court through its instructions. See, e.g., Coker v. Abell-Howe Co., 491 N.W.2d 143, 150–51 (Iowa 1992). Specifications of negligence are proposed by each party claiming that another was negligent and must be approved by the trial court. These specifications "limit the determination of the factual questions arising in negligence claims to only those acts or omissions upon which a particular claim is in fact based and upon which the court has had an opportunity to make a preliminary determination

-7-

of the sufficiency of the evidence to generate a jury question." Rinkleff v. Knox, 375 N.W.2d 262, 266 (Iowa 1985); see also Coker, 491 N.W.2d at 151. For a factual specification to be provided to the jury, the underlying evidence must be substantial, meaning that "a reasonable mind could accept it as adequate to reach a conclusion." Nichols v. Schweitzer, 472 N.W.2d 266, 274 (Iowa 1991). In weighing the sufficiency of the evidence, a reviewing court gives the evidence "the most favorable construction it will bear in favor of the party seeking submission." Coker, 491 N.W.2d at 150.

We review the district court's jury instructions for an abuse of discretion. McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010). Our review is "limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Campos v. City of Blue Springs, Mo., 289 F.3d 546, 551 (8th Cir. 2002) (citations and quotation marks omitted). This court will reverse a verdict because of instructional error "only if it finds the error affected the substantial rights of the parties." Jones v. Swanson, 341 F.3d 723, 734 (8th Cir. 2003). In this diversity action, Iowa law applies to the substance of the instructions and federal law "governs our review of the discretion exercised in refusing or admitting such instructions." Bennett v. Hidden Valley Golf & Ski, Inc., 318 F.3d 868, 873 (8th Cir. 2003) (citation omitted).

Appellants challenge the first two specifications of negligence given by the district court. The court explained that the plaintiffs claim that Atanasova was at fault in one or more of the following ways:

1.    Fail[ing] to maintain a proper lookout to the rear;
2.    Moving a vehicle which was stopped, standing or parked without first ensuring the movement could be made with reasonable safety;
3.    Operating a motor truck and trailer having a length in excess of 30 feet while the clearance lights were not illuminated; and

-8-

4. Failing to operate a motor vehicle at a reasonable and prudent speed for the given conditions.

Failure to maintain a lookout to the rear was defined as "the lookout a reasonable person would keep in the same or similar situation. . . . A driver need not keep a lookout to the rear all the time, but must be aware of the presence of others when the driver's actions may be dangerous to others." Appellants argue that Atanasova could not have seen Holtkamp behind her because of the hill. They reason that there is therefore no support for the conclusion that Atanasova had not maintained a proper lookout and the first specification should not have been given.

The evidence, taken in the light most favorable to the appellees who sought the instruction, showed that Atanasova was parked on the shoulder and then merged back onto the highway just before Holtkamp hit her. Atanasova would have had a duty to look to the rear before moving into the lane of traffic. A reasonable person could have inferred from Young's testimony and the location of the accident that the crash took place shortly after Atanasova had moved her truck back onto the highway, that Holtkamp's headlights would thus have been visible as she neared the top of the hill, but that Atanasova had not looked behind her to see that a car was approaching. Alternatively, the evidence was sufficient to support a reasonable person's conclusion that Holtkamp had already crested the hill when Atanasova drove back onto the highway. There was evidence that thirteen seconds elapsed between the time Holtkamp crested the hill and the crash. It was thus possible that Atanasova could have seen Holtkamp if she had looked behind her before moving her truck. We conclude that there was sufficient evidence to support the specification on proper lookout and that the district court did not abuse its discretion by including it.

We reach the same conclusion with respect to the second specification about moving a stopped vehicle without ensuring the movement could be done with reasonable safety. One could reasonably have inferred that because of the hill Atanasova was not able to see far enough behind her to ensure that she could move

her vehicle back onto the road safely from her stopping point. This evidence supports the conclusion that Atanasova should have driven forward until she could see far enough behind her to ensure a safe merger. A reasonable person could also infer that Holtkamp's car or headlights were visible when Atanasova merged and that Atanasova nonetheless moved into the lane of traffic in front of her at a much slower speed. Because there was sufficient evidence to support the second specification, the district court did not abuse its discretion by giving this instruction.

B.

We turn now to appellants' challenges to the district court's rulings excluding evidence of Holtkamp's drug use and of the citation she received for following too closely. The district court has wide discretion in admitting and excluding evidence. Bennett, 318 F.3d at 878. The Federal Rules of Evidence, not state law, provide the standards for evidentiary issues in a diversity action. Spencer v. Young, 495 F.3d 945, 950 (8th Cir. 2007). We will not reverse the district court's determination unless it "affects a substantial right of the party challenging the ruling." Williams v. Wal-Mart Stores, Inc., 922 F.2d 1357, 1360 (8th Cir. 1990).

We conclude that the district court did not abuse its discretion in excluding evidence of Holtkamp's marijuana use because its prejudicial effect outweighed its probative value. See Fed. R. Evid. 403. No evidence suggested that Holtkamp had used marijuana on the date of the accident. Thus, the fact that Holtkamp may have used marijuana around that time would have had "an undue tendency to suggest decision on an improper basis." United States v. Yellow, 18 F.3d 1438, 1442 (8th Cir. 1994) (quoting Fed. R. Evid. 403, Adv. Comm. Note). The absence of any indication that Holtkamp was impaired makes this case different from those where we have upheld the admission of evidence that the plaintiff was under the influence of drugs or alcohol at the time of an accident. Cf. Spencer, 495 F.3d at 950 (alcohol

consumption by driver within hour of accident); Manatt v. Union Pac. R.R. Co., 122 F.3d 514, 517 (8th Cir. 1997) (drug use by plaintiff the night he was hit by train).

Atanasova and Venture One also contend that the district court abused its discretion by allowing the redaction of what it described as "clearly inadmissible" references to Holtkamp's citation. See United States v. Wilkinson, 124 F.3d 971, 974 (8th Cir. 1997) (stating standard for withdrawal of evidence). While Iowa law categorically prohibits the admission of a record of conviction of a motor vehicle violation in any civil action, Iowa Code § 321.489; Burns v. Rodriguez, 448 N.W.2d 673, 675 (Iowa Ct. App. 1989), the federal rules do not. Federal courts have suggested however that the prejudicial effect of evidence of a contested citation outweighs its probative value. See generally Hill v. Rolleri, 615 F.2d 886, 890 (9th Cir. 1980); Baker v. Elcona Homes Corp., 588 F.2d 551, 559 (6th Cir. 1978); Richardson v. Am. Motorists Ins. Co., 396 F.2d 160, 160 (5th Cir. 1968). Holtkamp contested her citation and asserted a "sudden emergency" defense to excuse her negligence which was unavailable in the criminal proceeding. We cannot say that the district court's decision to permit redaction was an abuse of discretion.

C.

Appellants contend that the district court should have granted their motion for a new trial because the jury's apportionment of fault was unsupported by the evidence. We review the district court's denial of a motion for a new trial for abuse of discretion. PFS Distrib. Co. v. Raduechel, 574 F.3d 580, 589 (8th Cir. 2009). "When the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." Jones, 341 F.3d at 732 (citation omitted). That is because the district court had "the benefit of hearing the testimony and observing the demeanor of witnesses throughout the trial." Bonner v. ISP Techs., Inc., 259 F.3d 924, 932 (8th Cir. 2001) (citation omitted).

The jury heard evidence that could support findings that Atanasova's truck was dark from the rear, that she merged from the shoulder without ensuring she could do so safely relative to other vehicles, that she was traveling between 30 and 40 mph below the speed limit, and that she was using her cell phone while driving onto the highway. There was also evidence that other drivers had difficulty stopping before reaching the accident site after they crested the hill despite the warning lights. A juror could infer from this that the crash was caused not by Holtkamp's negligent driving, but rather by Atanasova's creating a dangerous obstacle with her slow moving truck. We conclude that the jury's allocation of fault between Atanasova and Holtkamp was not against the weight of the evidence and that the district court did not abuse its discretion in denying appellants' motion for a new trial.

D.

Appellants further contend that the district court should have granted their motion for judgment as a matter of law on Finley's claim for loss of consortium with K.H. The jury awarded $25,000 to Finley on this claim. Under Iowa law, parents of a child can sue "for the expense and actual loss of services, companionship and society" due to the injury of a minor child. Iowa Code § 613.15A. Recovery cannot be based on the parent's "grief, mental anguish, or suffering." Wardlow v. City of Keokuk, 190 N.W.2d 439, 448 (Iowa 1971). This court reviews de novo the district court's decision to deny a motion for judgment as a matter of law. Shaw Grp., Inc. v. Marcum, 516 F.3d 1061, 1064 (8th Cir. 2008). We "must affirm the jury's verdict unless, after viewing the evidence in the light most favorable to [Atanasova and Venture One], we conclude that no reasonable jury could have found in [their] favor," and we will only set aside a jury verdict if "there is a complete absence of probative facts to support [it]." Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010) (citation omitted).

The jury heard evidence that Finley had maintained contact with son K.H. before and after the accident and that K.H. would not be able to participate in the same activities he had before the crash. There was also evidence that K.H. will suffer cognitive limitations affecting his interactions with Finley and that he is likely to need additional surgery requiring hospitalization and recovery time, limiting the amount and quality of time Finley can spend with him. A reasonable jury could find that the effects of the accident on K.H. would deprive Finley of some level of companionship and society with his son and that Finley would experience this loss for the sixteen years K.H. would remain a minor after the accident. The district court did not err in denying the motion for judgment as a matter of law.

E.

Finally, we address the various claims of error with respect to the jury's damage award for Holtkamp. Appellants challenge the awards of $40,000 for future "loss of full mind and body," $10,000 for loss of full mind and body in the past, $150,000 for past physical and mental pain and suffering, $150,000 for future physical and mental pain and suffering, $1,812 for lost wages, and part of the award for past medical expenses. They do not challenge the $40,000 calculated for Holtkamp's loss of consortium with K.H.

Appellants moved for judgment as a matter of law and for a new trial based on the admission of Holtkamp's medical records without medical testimony about the ongoing effects of her injuries. They rely on Iowa law requiring medical testimony to support a claim of damages for future pain when the symptoms are "subjective only." Daniels v. Bloomquist, 138 N.W.2d 868, 873 (Iowa 1965). In practice Iowa courts require medical testimony only in those cases in which the evidence of injury as well as its ongoing effects is the plaintiff's own subjective statements. Id. at 872–83; Kaltenheuser v. Sesker, 121 N.W.2d 672, 677 (Iowa 1963); Shuck v. Keefe, 218 N.W. 31, 35 (Iowa 1928). Direct expert evidence is not essential to establish the

future effects of an injury if the future pain and suffering can be inferred from the nature of the injury alone. Kaltenheuser, 121 N.W.2d at 677.

Holtkamp presented evidence of her spinal fracture through her x-ray film and the testimony of the physician who treated her on the night of the accident. The damages were based on ongoing pain in her neck radiating to her shoulder and arm. The x-ray and medical testimony provided objective evidence of her injury, from which the jury could infer ongoing and future pain as confirmed in the medical records and bills following the accident. The jury was also aware that Holtkamp was 18 at the time of the accident, had testified to experiencing ongoing pain for the three years leading up to the trial, and could be expected to live for many more years. See DeBurkarte v. Louvar, 393 N.W.2d 131, 140 (Iowa 1986) ("[W]hen pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony." (citation omitted)). The jury was also able to consider evidence of the trauma Holtkamp experienced after the injury in reaching its damages determinations. We conclude that the district court did not abuse its discretion by admitting the medical records without additional medical testimony, and the damage amounts are not without support in the record.

Appellants also claim that the district court abused its discretion by refusing to give a jury instruction on Holtkamp's failure to mitigate damages based on the fact that she had not worn the cervical collar as prescribed. See McCoy, 593 F.3d at 744 (stating standard of review). Under Iowa law, an instruction on failure to mitigate damages is appropriate only where there is "substantial evidence that there was something that the plaintiff could do to mitigate his loss and that requiring the plaintiff to do so was reasonable under the circumstances." Greenwood v. Mitchell, 621 N.W.2d 200, 205 (Iowa 2001). The plaintiff must have acted "unreasonably" in failing to follow the advice of her physician, and "there must be proof of a causal connection between the plaintiff's failure to mitigate and [her] damages." Id.

-14-

Holtkamp was told to wear her collar 24 hours a day for six to eight weeks. There was evidence that Holtkamp took off her neck collar for an hour a day in the first month after the accident and had been without it "for several weeks" by six weeks after the accident. The record also shows that the collar caused her more pain and that she had to be refitted for a smaller one a month after the accident. Appellants rely on a medical record from a month after the accident which states that Holtkamp reports "that the pain has become progressively worse and she since she [sic] has stopped wearing her collar." This typographical error in the record is ambiguous: it could be read to mean either that the collar caused the pain to worsen or that its removal did. Another notation in that same record, however, clarified that the "pain improved with the removal of collar" and was "worse with collar." The medical report cited by appellants is thus insufficient to show that Holtkamp's action of removing her collar caused the damages she sought to recover. Because Holtkamp's removal of the collar was not unreasonable in light of the discomfort it caused and Atanasova and Venture One failed to show causation, the district court did not abuse its discretion by refusing to give an instruction on failure to mitigate.

Finally, appellants contend that the jury awards of $40,000 for future loss of full body and mind, $150,000 for past pain and suffering, and $150,000 for future pain and suffering were "flagrantly excessive" and that the district court should have granted their motion for a new trial on Holtkamp's damages or ordered remittitur. We review the district court's denial for abuse of discretion. Sheriff v. Midwest Health Partners, P.C., 619 F.3d 923, 931 (8th Cir. 2010).

In a diversity action for negligence, state substantive law governs the determination of whether the jury award was excessive, but federal law governs "those issues involving the proper review of the jury award by a federal district court." Schaefer v. Spider Staging Corp., 275 F.3d 735, 738 (8th Cir. 2002) (quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278–79 (1989)). Iowa law provides that the jury's verdict should only be altered if it "(1) is

-15-

flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive, or (4) is lacking in evidential support." Gordon v. Carey, 603 N.W.2d 588, 590 (Iowa 1999).

Damages for the loss of "full mind and body" refers to the loss of bodily function or impairment, separate from pain and suffering. Brant v. Bockholt, 532 N.W.2d 801, 804–05 (Iowa 1995). Based on her life expectancy, Holtkamp was likely to live for approximately sixty more years from the time of trial. The award for Holtkamp's future loss of full mind and body corresponds to $663 per year during this period. Holtkamp testified that the pain and numbness in her shoulder and arm affects her doing her work as a house cleaner and restricts her participation in her former pastimes. The evidence indicates that her body is unlikely to permit her to function in the same way as before the accident. There is record support for the jury award, and the amount is not so great as to render the district court's denial of a new trial or remittitur an abuse of discretion.

Physical pain and suffering includes "bodily suffering, sensation or discomfort." Brant, 532 N.W.2d at 804. Mental pain and suffering includes "mental anguish, anxiety, embarrassment, loss of enjoyment of life, a feeling of uselessness, or other emotional distress." Id. The Iowa Supreme Court has cautioned that "[d]amages for physical and mental pain and suffering cannot be measured by any exact or mathematical standard and must be left to the sound judgment of the jury." Estate of Pearson ex rel. Latta v. Interstate Power & Light Co., 700 N.W.2d 333, 347 (Iowa 2005).

We recognize that the jury awards of $150,000 for past and future physical and mental pain and suffering are substantial. Holtkamp testified however that she often comes home from work and lies down for the rest of the evening because of her pain. She repeatedly sought medical help for the pain in the years leading up to trial

without success.  Moreover, she is expected to live for several more decades during which the pain appears likely to continue.  We conclude that the damage awards do not present the exceptional case requiring judicial interference with the jury's verdict, see Cowan v. Flannery, 461 N.W.2d 155, 158 (Iowa 1990), and the district court did not abuse its discretion in denying the motion for a new trial or remittitur.

III.

Accordingly, we affirm the judgment of the district court.

_____